UNITED STATES of America,
Plaintiff–Appellee,

v.

Max Allen ELLISON,
Defendant–Appellant.

No. 86–3025.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1987.

Decided Dec. 8, 1987.

As Amended Dec. 8, 1987.

---

688

Thomas Appleton, Springfield, Ill., for defendant-appellant.

David E. Risley, Asst. U.S. Atty., J. William Roberts, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before FLAUM, EASTERBROOK and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Defendant-appellant, Max A. Ellison ("Ellison") appeals the district court's order denying his motion to withdraw his guilty plea pursuant to Fed.R.Crim.P. 32(d).[1] Based on the record of the plea proceeding, the district court found that Ellison's plea of guilty was knowingly and voluntarily made and that Ellison failed to present a "fair and just" reason for withdrawing his plea. We affirm.

In late 1984, Max Ellison was charged with kidnapping, receiving ransom money and interstate transportation of stolen property. Subsequently, in connection with the same incidents leading to these initial charges, Ellison was also indicted for six counts of interstate transportation of stolen property. Shortly thereafter, while incarcerated in the Sangamon County Jail in Springfield, Illinois, Ellison formulated and took steps to implement his "unscheduled release." As a result, an indictment for attempted escape was added to the other two.

Ellison, after some vacillation, finally agreed to plead guilty to one count of kidnapping and one count of carrying a firearm in connection with a federal crime of violence; one count of interstate transportation of stolen property; and the charged attempted escape. In return, the government dismissed the remaining charges; promised that no further charges arising from the same incidents would be filed;[2] and recommended that concurrent sentences be imposed whenever possible. The government did not, however, make any further sentencing recommendations,

---

1. Rule 32(d) states:
   If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c), the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

2. The federal prosecutors also indicated that the state authorities had agreed not to file additional charges against Ellison.

leaving the length and type of the sentence to the discretion of the court. The parties' agreement was memorialized in a plea agreement.

On March 19, 1985, Judge James T. Moody of the Northern District of Indiana, sitting by designation, conducted a plea proceeding. In order to establish that Ellison's plea was knowingly and voluntarily made, the court followed the procedures outlined in Federal Rule of Criminal Procedure 11.[3] Engaging in a colloquy with Ellison, Judge Moody carefully and thoroughly established the facts on which the government's case against Ellison was based; informed Ellison of his rights and the consequences of waiving those rights;

established that Ellison understood his rights and the charges against him; established that Ellison had committed the crimes to which he was pleading; and confirmed that Ellison's capacity to understand the proceedings was in no way impaired.

■ On the basis of Ellison's answers to its questions, the court found that Ellison had knowingly and voluntarily entered a plea of guilty. The court then accepted Ellison's guilty plea. However, despite the fact that Ellison's plea agreement placed no limits on the length or type of sentence to be imposed, the court took the plea agreement under advisement.[4] Judge

---

3. In its pertinent parts, Rule 11 provides:

... (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and

(2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and

(3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and

(4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

(d) Insuring That the Plea is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, deter-

mining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

... (f) Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

4. A plea agreement which does not limit the sentencing judge's discretion as to length or type of sentence to be imposed is sometimes (as it was here) referred to as a "straight plea" agreement. Normally, a judge presented with a "straight plea" agreement can accept or reject the agreement at the plea proceeding since he is unfettered in his ability to fashion a sentence under the specific criminal statute involved. Thus, the acceptability of such an agreement is generally apparent at the time the plea is tendered. Where, on the other hand, the plea agreement proposes a limit on the length of sentence, predetermines a specific sentence or prescribes the type of sentence, the judge may need to review the defendant's presentence report. In such a situation, pursuant to Rule 11(e)(2), the judge may take the agreement under advisement "until there has been an opportunity to consider the presentence report." By reviewing the defendant's presentence report, the judge is able to take into consideration a variety of factors relating to the defendant which may aid the judge in determining whether the proposed agreement and sentence limitations are acceptable.

Even where a judge wishes to delay acceptance of a plea agreement, there is an alternative to accepting a plea of guilty and then taking the

Moody stated he would make a decision to accept or reject the plea agreement at the time of sentencing.[5]

Two days before his sentencing, Ellison filed a *pro se* motion to withdraw his guilty plea. A hearing on that motion was conducted by Judge Moody on May 20, 1985. The thrust of Ellison's motion was that his plea was the result of certain psychological pressures stemming from his living conditions and the absence of contact with his family or the outside world. Ellison also claimed he was innocent of the charges against him and had entered his plea only because his attorney suggested he cooperate with federal authorities.

At the hearing before Judge Moody, Ellison testified he believed that if he pled guilty, he would be moved from the local jail to the Metropolitan Correctional Center ("MCC"), a federal institution in Chicago, where he would be permitted to see his family. Although Ellison did not assert such a move was guaranteed, he did testify that attorney Michael Kopec, his attorney at the time of the plea, suggested such a move would be likely. Ellison also claimed he had been told he could back out of his plea for any reason at any time until the court accepted his plea agreement.

Under questioning by the court, Attorney Kopec denied advising Ellison to plead simply to avoid making trouble for Kopec with the government. He admitted however, that he told Ellison it was likely, though not guaranteed, that Ellison would be moved to the MCC.

Judge Moody denied Ellison's motion to withdraw his plea, finding that Ellison had not been coerced into pleading guilty. Based on Ellison's previous sworn answer to the court's inquiry whether he had been threatened or promised anything outside of the plea agreement, the court found Ellison knowingly and voluntarily entered his plea. Judge Moody then sentenced Ellison to a 65–year term of imprisonment.

Ellison appealed Judge Moody's order denying his motion to withdraw his plea, arguing he only entered his plea because he thought he had an absolute right to withdraw the plea up until the time the court actually accepted the plea agreement. Ellison also argued his plea was the result of his attorney's representations and not a product of his free will.

We previously rejected Ellison's argument that he had an absolute right to withdraw his plea until the court accepted the plea agreement,[6] but remanded the matter for another hearing on the issue of voluntariness, finding that the interests of Ellison and his attorney conflicted at the first hearing. *United States v. Ellison*, 798 F.2d 1102 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987).

On remand, Judge Richard Mills, of the Central District of Illinois, heard further evidence on Ellison's motion to withdraw his plea. At that hearing, Ellison reiterated that he had been told if he pled guilty he would be moved to the MCC in Chicago and would be allowed to contact his family. Ellison was also questioned

---

plea agreement under advisement as was done in this case. If the sentencing judge is unsure of the acceptability of the plea agreement, he may decline to either accept or reject the plea of guilty at the time the plea is tendered. The judge may then advise the defendant that he will be notified of the court's acceptance or rejection of the plea of guilty—and the plea agreement—in open court at a later date (typically a tentative sentencing date) after review of the presentence report. This method avoids the problem encountered here since acceptance of the plea and sentencing occurs at the same proceeding.

**5.** We note that the district court informed Ellison of its intention to take the plea agreement under advisement *before* Ellison entered his

guilty plea and only after asking Ellison whether he still wished to go forward with the plea. Nonetheless, the court's unusual procedure may have created some confusion and unnecessarily complicated the proceedings. While we cannot say the court's method of bifurcating the acceptance of the plea and the acceptance of the "straight plea" agreement is legally incorrect, we strongly urge that such a procedure be avoided in the future.

**6.** Ellison appealed this court's decision concerning his absolute right to withdraw his plea to the United States Supreme Court. Ellison's petition for certiorari was still pending at the time Ellison filed this appeal. Ellison did not therefore, expressly reargue that issue on this appeal.

about his attorney's advice with respect to the benefit of pleading guilty. Ellison testified:

> He [Kopec] advised me it was—the agreement itself was a good plea agreement for me. He said it would get rid of Illinois, get them out of the picture, I'd be in contact with friends and family again, I'd be living a better condition wise and the same stuff.

Transcript of Proceeding on Motion to Withdraw Guilty Plea, 12–2–86, p. 21. Ellison also testified that he only entered his plea so that he could see his family and that he fully intended to withdraw his plea once he had been moved to the MCC. Ellison stated that he was of the belief that the only way to see his family and to improve his day-to-day living conditions was to enter a plea.

On cross-examination Ellison stated:

> ... the whole reason for the plea itself was just to buy me some time to see my family again. According to Mr. Kopec, I could withdraw from the plea up until it was finally accepted by the judge.

Transcript, p. 28.

On cross-examination, Ellison admitted he had not been threatened or physically forced to enter the plea agreement; that he read, understood, and signed the agreement before his plea was taken; and that he understood the nature of the plea proceedings. Under questioning by the court, Ellison also reaffirmed all the answers he gave Judge Moody during the original plea proceeding.

At the hearing before Judge Mills, Attorney Kopec testified that Ellison waivered between proceeding with a jury trial and entering a guilty plea. This waivering continued until the time the plea proceeding commenced. In light of Ellison's indecisiveness and to protect himself in the event of later complications, Kopec wisely presented Ellison with a six page letter, committing to paper his advice to Ellison. The letter, which was read and signed by Ellison in Kopec's presence, begins by ex-

plaining the various charges against Ellison and the likelihood of success in defending against each charge.[7] With respect to the plea agreement which Ellison had already signed, the letter stated "I think the plea agreement is in your best interest" but also stated "... you can withdraw from this plea agreement at any time up to the point that you step into court and tell the judge that you wish to go ahead with it." Notably absent from this discussion of the plea agreement were any representations that Ellison would be moved to the MCC or allowed to see his family if he entered his plea. Kopec's letter did address Ellison's complaints about the conditions in the county jail, including complaints about detention, deadlock, and lack of outside contact. Kopec advised:

> .... You have brought most of these things on yourself ... I have to conclude that they [county jail authorities] have adequate reason to hold you in detention and under deadlock ... I also believe that they have adequate reason to deny you visitations by your relatives and deny you access to newspapers ... I want you to understand that my powers are extremely limited with regard to jail conditions.... About the only thing I can do is what I have done thus far, and that is to talk with the jail authorities to make sure that you are credited for the money and stamps which have been sent to you and to see that your mail is forwarded to and from you in a timely manner.

Government Exhibit 3.

Kopec also testified that when he first met Ellison, Ellison stated he knew Kopec could not represent him zealously, given his representation of other criminal defendants in federal court and his resulting relationship with the U.S. Attorney's Office. Kopec testified he explicitly told Ellison "that this was absolutely not the case, that I would take the case to trial if he desired to do so." Transcript, p. 71.

Government Exhibit 3.

---

7. The letter was introduced into evidence during the course of the hearing before Judge Mills as

In Kopec's estimation, Ellison pled guilty to get out of solitary confinement in the local jail and to get to the MCC, where he would have more privileges.[8] He also pled because he agreed with Kopec's assessment of his chances at trial.

With respect to Ellison's allegations that he never intended to be bound by the plea agreement, Kopec testified that he spent an inordinate amount of time with Ellison discussing the consequences of withdrawing his guilty plea. According to Kopec, Ellison was finally firm in his resolve to go ahead with the plea and it was not until Ellison handed him his *pro se* motion two days before sentencing, that Kopec had any inkling Ellison wanted to withdraw his plea.

At the conclusion of the hearing, Judge Mills found that Ellison's subjective intent in entering the plea was irrelevant to the issue of whether Ellison entered it knowingly and voluntarily. Rather, the relevant inquiry was what Ellison told the court at the time his plea was taken. Ellison testified that he told Judge Moody that he understood the charges against him, that he was willing to forego his right to a jury trial, and that he had not been threatened or coerced into entering his plea. Judge Mills found that Ellison's answers to Judge Moody's extensive questioning were sufficient, under Fed.R.Crim.P. 11, to bind Ellison to his guilty plea. Moreover, the evidence, adduced at the hearing before Judge Mills, demonstrated that Ellison's attorney made no promises to Ellison to induce him to plead. The court found that Ellison's attorney made some inquiries, at Ellison's behest, to see whether some of the restrictions at the county jail could be loosened and ultimately ascertained that Ellison would likely be moved to the MCC between the time of his plea and the sentencing, although that move was not guaranteed. The district court also found there was no credible evidence that Ellison's attorney induced Ellison to plead in order to avoid

making "waves" with the government. Ellison's attorney simply provided Ellison with a realistic assessment of his chances at trial and the advice that the plea agreement was "in his best interest."

On this appeal, Ellison concedes that the government made no explicit promises about his living conditions but contends he was under the impression his conditions would be improved if he pled guilty (Appellant's Brief p. 11). In addition, Ellison also concedes that Judge Moody met all the requirements of Fed.R.Crim.P. 11, at the time his plea was taken (Appellant's Brief p. 12). Nevertheless, Ellison contends his plea was coerced because he believed he had an absolute right to withdraw his plea and so, in order to improve his living conditions, he lied and pled guilty to crimes he did not commit.

Although Ellison does not expressly argue that it was incumbent upon the district court to delve into his motivations for pleading guilty and to determine that he was lying under oath, this is Ellison's implicit argument before this court. According to Ellison, Judge Moody should somehow have divined that he never intended to be bound by his plea—for any number of reasons—and that he was simply using the plea agreement as a convenient method of improving his living conditions. Ellison argues that because Judge Moody failed to probe into Ellison's motivations, Judge Mills' reliance on the Rule 11 transcript was misplaced and the earlier plea proceeding "should [have carried] little if any weight" in ruling on his motion to withdraw his plea.

A defendant must demonstrate that a "fair and just" reason exists for withdrawing his guilty plea. Fed.R.Crim.P. 32(d); *United States v. Thompson*, 680 F.2d 1145, 1151 (7th Cir.1982) *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983). One "fair and just" reason for withdrawing a plea is where that plea was

---

**8.** With respect to Ellison's move to the MCC, Attorney Kopec testified:

> ... there were no guarantees but that if he [Ellison] chose to plead guilty that attempts—a recommendation would be made to

the—to get him out of Sangamon County jail and into another environment and the hope was that that would provide him greater freedom.

Transcript p. 74.

not voluntarily made. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

To ensure that the plea is voluntary and that a later motion to withdraw the plea will not become necessary, Fed.R.Crim.P. 11(d) requires that the "trial judge ask the defendant specific questions concerning the voluntariness of the plea agreement." The only rational manner in which a judge may determine whether a plea is knowingly and voluntarily made, is to observe the defendant's demeanor and responses to the court's questions and to rely on the defendant's sworn answers. The court can best expose "the defendant's state of mind on the record through personal interrogation." *United States v. Fountain,* 777 F.2d 351, 356 (7th Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). Thus, in a Rule 32 proceeding, when the court is asked to reevaluate the defendant's intent at the time of the entry of a plea, that reviewing court's ultimate determination of the defendant's state of mind depends, in large part, on what the defendant said during the Rule 11 colloquy.

The whole point of the plea proceeding (the Rule 11 colloquy) is to establish that the plea was knowingly and voluntarily made. As we said in our first opinion in this case:

> Rule 11's provisions specifically seek to ensure the entry of a plea is not a meaningless act. Great care is taken when accepting pleas under Rule 11. Plea agreements are placed on the record, the voluntariness and accuracy of the plea is ascertained, and detailed advice is provided to the defendant concerning his rights and the consequences of his plea as well as a determination that [the] defendant understands these matters.

*United States v. Ellison,* 798 F.2d at 1106. The record of such plea proceedings forms the basis by which the acceptability of a plea of guilty is measured.

■ The record that is created by these questions is accorded, as we have said, a "presumption of verity. *Key v. United States,* 806 F.2d 133, 136 (7th Cir. 1986). Thus, a defendant who simply files a motion to withdraw his plea on the ground that his plea was not voluntary, contrary to his assertions at the Rule 11 proceeding, faces a heavy burden of persuasion. Moreover, the district court's findings with respect to whether the defendant has met that burden will be accorded great weight and will not be reversed unless clearly erroneous. *United States v. Suter,* 755 F.2d 523, 525 (7th Cir.) *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985); *United States v. Michaelson,* 552 F.2d 472, 475 (2d Cir.1977).

Rational conduct requires that voluntary responses made by a defendant under oath before an examining judge be binding. Such a requirement is consistent with reason and common sense. For a defendant to claim (as Ellison has) that he believed he could lie and later recant to achieve some perceived advantage does not comport with rational conduct. Ellison's sworn responses before a district judge were not coerced and those answers control his fate.

We will not force an attitude of skepticism on district judges which would eliminate the presumption of truthfulness expected from responses given under oath. Nor will we discount the use of the record of a Rule 11 plea proceeding in a defendant's effort to withdraw his plea.

■ The district court properly analyzed the record of the plea proceeding and the evidence in denying Ellison's motion to withdraw his plea of guilty. The order of the district court is

AFFIRMED.