**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Arnita TRUSSEL and James Barker,**
**Defendants–Appellants.**

**Nos. 91–1220, 91–1318.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1991.

Decided April 14, 1992.

---

Stephen A. Ingraham, Asst. U.S. Atty., Milwaukee, Wis. (argued), for plaintiff-appellee.

William S. Mautner (argued), Atinsky, Kahn, Sicula & Teper, Milwaukee, Wis., for defendant-appellant Arnita Trussel.

Frank T. Scott, Racine, Wis., Jerry H. Gonzalez, Anthony Deutch (argued), Gonzalez & Associates, Milwaukee, Wis., for defendant-appellant James Barker.

Before CUMMINGS and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

James Barker and Arnita Trussel each pleaded guilty to one count of conspiring to possess, with intent to distribute, cocaine and marijuana. The indictments and convictions arose from a series of drug transactions between Barker and a confidential informant, James Patterson. On December 15, 1990, after some negotiations, Barker agreed to sell Patterson an ounce of cocaine. That day, co-conspirators Carmen White and Shannon Jackson delivered the cocaine to Patterson at a Racine, Wisconsin motel room. On April 20, 1990, Barker sold three more ounces of cocaine to Pat-

terson. This sale took place at Trussel's home with Trussel's approval.

On May 12, 1990, Barker arranged for Patterson to supply Barker approximately 40 pounds of marijuana in exchange for 20 ounces of cocaine and $18,000. On May 18, Barker met Patterson at another Racine motel. After Patterson showed Barker the marijuana, Barker paid Patterson $3,300 cash and $15,000 in gold jewelry. Barker was arrested immediately after this transaction.

Later that day, police searched Trussel's home pursuant to a warrant. The police found seven pounds of marijuana and one-half ounce of cocaine inside a briefcase belonging to Barker. Trussel had been allowing Barker to use her home to store the marijuana and cocaine. In a taped conversation on May 16, Trussel had told Patterson that she had "some weed" for sale. That was not Trussel's only connection to Barker's drug business. On four or five occasions from December 1989 to May 1990, Barker left packages of cocaine worth $20 to $25 with Trussel, with instructions to sell those packages to people who would come to her residence to pick them up. Barker paid money to Trussel for her services, for household expenses and support of their young daughter.

The district court sentenced Barker to 222 months imprisonment. The court sentenced Trussel to 18 months imprisonment. Barker appeals both his conviction and sentence; Trussel appeals her sentence.

## I.  Barker

### A.  Conviction

Barker first argues that the district court erred by denying his motion to withdraw his guilty plea without holding an evidentiary hearing. According to Barker, at the time of his guilty plea he was confused about a possible entrapment defense, confusion his lawyers were unable to dispel, he says, because of their ineffective representation. This resulted, says Barker, in a guilty plea that was not knowing or voluntary because it was entered in haste and confusion.

The circumstances surrounding Barker's guilty plea are as follows. At Barker's arraignment in May 1990, the district court appointed a lawyer for him. Several weeks later, the court allowed Barker to substitute retained counsel for his appointed lawyer. One week after that, Barker and his retained counsel signed a guilty plea agreement with the government, which was filed shortly afterward.

On October 5, the district court held a hearing concerning Barker's plea. At that change of plea hearing, Barker asked the court to appoint a new lawyer for him to discuss questions he had about a possible entrapment defense. Barker specifically asked the judge if entrapment was against the law. Barker was not satisfied with his retained counsel's answers to his questions and was not ready to plead guilty "until he [had] more satisfactory response to his ... questions." The trial judge refused to appoint a new lawyer for Barker, but he did allow him to confer with his previously-appointed attorney. The judge adjourned the hearing for four days to allow Barker to consult with his lawyers.

On October 9, Barker's change of plea hearing reconvened. After placing Barker under oath and explaining to Barker that any false statements he might make at the hearing could result in perjury charges against him, the judge conducted a lengthy and thorough hearing pursuant to Fed. R.Crim.P. 11. At that hearing, Barker unequivocally stated several times that he wished to plead guilty. Barker's responses to the judge's questions established that he understood the plea agreement, that he understood the rights he was waiving by pleading guilty, that he was freely and voluntarily pleading guilty, and that he understood both the positive and negative consequences of his plea, including the likelihood that he would be sentenced as a career offender under U.S.S.G. § 4B1.1 because of his two prior felony drug convictions. Most important for our purposes, Barker, in response to the judge's questioning, indicated that he was "fully satisfied" with his lawyers and their advice to him. Moreover, when asked by the judge if there

was anything his lawyers had not done for him that he had asked them to do, Barker responded, "No." The judge specifically found that "those matters that were of concern to" Barker (that is, a possible entrapment defense) had been addressed. Barker did not respond to this finding. After the judge concluded the Rule 11 inquiry and made his findings, Barker pleaded guilty. He also requested that his retained counsel continue to represent him for sentencing. Although he asked questions about other matters, Barker never mentioned anything about entrapment at the change of plea hearing.

Barker subsequently developed misgivings. In a letter to the district court dated December 15, 1990, Barker stated that he wanted to withdraw his guilty plea. Barker's letter stated that he was not guilty because he had been entrapped and that the government possessed a tape that would prove he was entrapped. According to Barker, his lawyers had not bothered to obtain this tape and, in fact, had conspired with the government to obtain his guilty plea. Barker asked the court to dismiss his retained counsel and to appoint a new lawyer to represent him.

On December 27, the district court, without taking evidence, denied Barker's requests to withdraw his guilty plea and to have a new lawyer appointed. The court also denied the motion of Barker's retained lawyer to withdraw from the case. After recounting, among other things, the case's procedural history, Barker's extensive criminal history, and Barker's unequivocal guilty plea and endorsement of his lawyers' performance on October 9, the judge found Barker's motions to be "prevarication" and an attempt to "manipulate" and "whipsaw the court."

■■■ Barker contends that the district court should not have denied his request to withdraw his guilty plea without holding an evidentiary hearing. Federal Rule of Criminal Procedure 32(d) provides that a district court "may permit" a defendant to with- draw his guilty plea before sentencing "upon a showing of any fair and just reason." Although we have stated that evi-

dentiary hearings on motions to withdraw pleas before sentencing "should be freely granted," *United States v. Fountain,* 777 F.2d 351, 358 n. 3 (7th Cir.1985), an evidentiary hearing is not a matter of right. *Id.* at 358. A court must grant an evidentiary hearing only when the defendant's motion presents a "fair and just" reason for withdrawing his plea. *United States v. Suter,* 755 F.2d 523, 525 (7th Cir.1985). No hearing is necessary, where, for example, "the allegations in the motion to withdraw the plea are mere conclusions or are inherently unreliable." *Fountain,* 777 F.2d at 358; see also *United States v. Thompson,* 906 F.2d 1292, 1299 (8th Cir.1990).

■■■ Whether or not a defendant has proffered a "fair and just" reason for withdrawing his plea depends on the circumstances of the particular case. For example, claims of involuntariness or confusion that in the abstract seem like sufficient reasons to allow a defendant to withdraw his plea, or at least look into the matter further, may be insufficient in the context of a record containing substantial indications of voluntariness and lack of confusion. One especially important consideration is the defendant's answers to the questions posed at his Rule 11 hearing. We accord the record created by a Rule 11 inquiry a "presumption of verity." *United States v. Ellison,* 835 F.2d 687, 693 (7th Cir.1987). " '[R]ational conduct requires that voluntary responses made by a defendant [when entering a guilty plea] ... be binding.' " *United States v. McFarland,* 839 F.2d 1239, 1242 (7th Cir.1989) (quoting *Ellison,* 835 F.2d at 693). A defendant who presents a reason for withdrawing his plea that contradicts the answers he gave at a Rule 11 hearing faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is "fair and just." Cf. *United States v. Stitzer,* 785 F.2d 1506, 1514 & n. 4 (11th Cir.1986) (no evidentiary hearing required on motion to withdraw plea in light of extensive Rule 11 inquiries court made before accepting plea). Since the trial judge, who is most familiar with the record and had the actual opportunity to observe the defendant dur-

ing the Rule 11 hearing, is in the best position to determine whether a proffered reason is, in context, "fair and just," we review the decision not to hold an evidentiary hearing deferentially. See *Suter*, 755 F.2d at 525–26 (applying clearly erroneous standard of review).

▮ Barker contends that he was confused about a possible entrapment defense and that he did not receive sufficient advice from counsel to dispel his confusion. The district court did not clearly err in holding that this was not a sufficient reason to require holding an evidentiary hearing. After Barker indicated on October 5 that he needed a more satisfactory response to his questions about entrapment before he could proceed to plead guilty, the judge gave Barker four days to consult with both his retained and appointed lawyers. On October 9, Barker came back to court, ready to plead guilty. The judge placed Barker under oath and conducted a thorough Rule 11 inquiry. Barker specifically stated that he was fully satisfied with his lawyers and their advice and that his lawyers had done everything he had asked of them. At the Rule 11 hearing, Barker displayed no confusion about what he was doing. Significantly, Barker never once mentioned the word "entrapment" at the hearing, although he asked the judge other questions. Barker was no babe in the woods. He was 42 years old and had four prior felony convictions, two in federal court. Given the thorough Rule 11 hearing, Barker's responses under oath to the judge's questions and Barker's age and experience with the criminal justice system, it was not clear error for the judge to conclude, without further evidence, that Barker's claims of confusion were just "an attempt to manipulate the court" rather than a "fair and just" reason for allowing Barker to withdraw his plea.

▮ Barker's contention that his guilty plea should be set aside because his lawyers provided constitutionally ineffective assistance fares no better. A defendant who contends that his guilty plea was not knowing and intelligent because of his lawyer's erroneous advice must show "that the advice was not within the range of competence demanded of attorneys in criminal cases." *United States v. Alvarez–Quiroga*, 901 F.2d 1433, 1437 (7th Cir.1990) (quoting *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235 (1973)). In examining a lawyer's performance, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

Barker has not overcome the presumption that his lawyers performed reasonably. Barker contends that his lawyers should have conducted more discovery but he does not say what they might have discovered (except for a vague reference in his letter to the trial judge to a "tape" he says would have proved his innocence). Barker also complains that his lawyers did not file motions but he does not say what motions they should have filed or how they might have aided his defense. Barker does not point to any particular advice his lawyers gave him that might have been wrong. He does complain that his lawyers' advice was not sufficient to answer his questions about entrapment, but his answers under oath at the Rule 11 hearing contradict this assertion. Even though Barker eventually received a 222–month sentence, his guilty plea was not a bad deal for him; the government significantly limited Barker's exposure at sentencing to a maximum of 20 years, see 21 U.S.C. § 841(b)(1)(C), by agreeing to drop four of the indictment's five counts against him and by agreeing not to file the information necessary under 21 U.S.C. § 851(a)(1) to expose Barker to § 841(b)(1)(C)'s possible 30–year sentence for second offenders. The government's case against Barker was strong, his drug deals with Patterson were on tape, and his entrapment defense was probably unlikely to succeed given evidence of drug deals aside from those he conducted with Patterson, the informant. Barker's complaint about his lawyers' performance provided no reason to allow him to withdraw his guilty plea.

*B. Sentence*

■ Besides challenging his conviction, Barker also challenges his sentence on several grounds. Barker first contends that the district court relied on improper reasons in deciding to deny him a two-level reduction in his offense level for accepting responsibility. See U.S.S.G. § 3E1.1. However, there are at least two factors the district court properly considered that are sufficient to support the district court's decision: Barker's belated attempts to withdraw his guilty plea, and Barker's failure to fully admit his involvement in the crime for which he was convicted.

Barker complains that the court's consideration of his motion to withdraw his guilty plea unfairly penalizes him for insisting on his right to trial. Whether that might ever be so in another case is irrelevant here. The district court found that Barker's attempt to withdraw his plea was nothing more than "prevarication" and an attempt to "manipulate" and "whipsaw" the court. That finding was not clearly erroneous. It is rational to conclude that somebody who prevaricates and attempts to manipulate the court is not somebody who, in the words of the background note to § 3E1.1 "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for" his crime. Barker's behavior was akin to (though not exactly the same as) obstructing justice; normally, a defendant who obstructs or attempts to obstruct justice is not entitled to a reduction for accepting responsibility. See U.S.S.G. § 3E1.1, application note 4.

Barker also complains that the district judge wanted him to admit his role in other crimes besides the crime for which he was convicted. That, says Barker, violates his Fifth Amendment right not to incriminate himself. Several circuits have held that denying a reduction for accepting responsibility because a defendant refuses to admit his role in crimes other than the crime for which he was convicted violates the Fifth Amendment because it penalizes the defendant for exercising his right to remain silent. Other circuits have disagreed, holding that denying a reduction is not the same as imposing a penalty. See generally *United States v. Frierson*, 945 F.2d 650, 656–60 (3d Cir.1991) (citing cases from various circuits on both sides of the argument), *cert. denied,* —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992). However, we need not take sides in this dispute. As we read the sentencing transcript, we do not believe the judge at sentencing was requiring Barker to admit involvement in crimes other than the conspiracy for which he was convicted. In any event, even if the judge wanted Barker to be more forthcoming about other crimes, it is clear that the judge found that Barker was not being candid about his involvement in the conspiracy for which he was convicted. As this court has noted, "[a] defendant 'accepts responsibility' only when he fesses up to his actual offense." *United States v. Escobar–Mejia*, 915 F.2d 1152, 1153 (7th Cir. 1990). Barker was willing to admit only to the transactions with Patterson, and even then he insisted that Patterson's improper pressure broke down his resistance to deal drugs. But evidence existed from which the district judge could, and did, conclude that Barker's conspiracy involved more than Barker was willing to admit. Barker's unwillingness to "fess up," along with Barker's attempts to withdraw his plea, provided the district court ample reason to conclude that Barker had not accepted responsibility for his crime. Indeed, these were the court's primary reasons for finding that Barker had not accepted responsibility. Given the strength of these factors, and the court's primary reliance on them, any error the district court may have made in considering any other factors would not render the district court's decision that Barker did not accept responsibility clearly erroneous. Cf. *Williams v. United States*, —— U.S. ——, ——, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992) (court of appeals may uphold departure from guideline range based in part on improper considerations if the district court's error did not affect the district court's decision).

■ Barker raises two other arguments regarding his sentence. First, Barker argues that the district court violated his right to due process by denying him a

sufficient opportunity to review and rebut his presentence report. Second, Barker argues that he received ineffective assistance of counsel at sentencing. The facts surrounding Barker's sentencing belie each of these claims.

After accepting Barker's guilty plea, the district court set Barker's sentencing for December 27, 1990. On December 15, Barker wrote his letter to the judge asking to withdraw his guilty plea and to appoint a new lawyer for him. Subsequently, Barker's lawyer filed a motion to withdraw because of an "irreconcilable break in the attorney-client relationship." Barker's lawyer had prepared objections to the presentence report but felt ethically obliged not to file them because of Barker's desire for a new lawyer.

On December 27, the district court denied Barker's motions to withdraw his plea and to appoint new counsel, and denied Barker's lawyer's motion to withdraw. Given Barker's unequivocally expressed desire at his change of plea hearing that his retained lawyer represent him for sentencing, the judge found Barker's request to replace that lawyer "disingenuous." The court re-set sentencing for January 29, 1991, and ordered Barker's lawyer to file his objections to the presentence report. Barker's lawyer did so, submitting six pages of typed, single-spaced objections.

On January 29, Barker told the judge that he had not seen his lawyer to discuss the presentence report. The judge suspended the hearing for one hour to allow Barker and his lawyer to confer. When the hearing resumed, Barker and his lawyer both told the judge they had had sufficient opportunity to confer about the presentence report. At sentencing, both Barker and his lawyer commented on the presentence report and their objections to it.

Federal Rule of Criminal Procedure 32(a)(1) requires that before imposing sentence a district court must determine that the defendant and his lawyer have had an opportunity to discuss the presentence report and must give the defendant and his lawyer an opportunity to comment on the report. The district court did precisely that in this case. Barker, while conceding he did have an opportunity to review, object to, and comment on the presentence report, complains that the court deprived him of a "meaningful" opportunity. This contention is meritless. Barker's lawyer submitted six pages of objections containing point-by-point rebuttals of numerous items in the report. Barker himself told the judge that he had sufficient time to review the report. Both Barker and his lawyer commented at sentencing about Barker's objections. Moreover, Barker does not specify how further time for review might have helped him. He does not point to any inaccurate information the judge relied on in sentencing him or any specific mitigating information he might have submitted if given more time to review the presentence report. In short, Barker has not shown that his sentencing hearing violated either Rule 32(a)(1) or the due process clause.

Barker's ineffective assistance of counsel claim is equally meritless. To show a Sixth Amendment violation, Barker must show that his lawyer's performance was deficient. See *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Barker complains that his lawyer inadequately investigated and prepared to rebut the presentence report. Barker also complains that his lawyer did not spend sufficient time reviewing the presentence report with him. But Barker's lawyer's written objections indicate otherwise; it is safe to assume that his lawyer gathered the information for those objections by investigation and consultation with Barker, not by osmosis. And, at the sentencing hearing, Barker himself told the court that he had sufficient time to review the presentence report, and Barker's lawyer vigorously and competently argued on Barker's behalf. Given all this, Barker's bare assertion that his lawyer did not properly investigate or prepare falls far short of rebutting the "strong presumption," *id.* at 690, 104 S.Ct. at 2065, that his lawyer's performance was reasonable.

Barker finally complains that the district court denied him effective assistance of counsel at sentencing by denying his motion to appoint a new lawyer for him. However, since Barker's lawyer's performance at sentencing was not constitutionally ineffective, the court's decision not to ap-

point a new lawyer for Barker did not violate his Sixth Amendment right to counsel. *Bae v. Peters,* 950 F.2d 469, 477 (7th Cir.1991).

## II. Trussel

■ Trussel's appeal borders on being frivolous. In fact, one of the arguments she raises—the district court's alleged error in declining to depart downward from the applicable guideline range—is frivolous. We have repeatedly held that we have no jurisdiction under 18 U.S.C. § 3742(a) over a district court's refusal to depart downward unless the sentence is imposed in violation of the law. See, e.g., *United States v. Franz,* 886 F.2d 973 (7th Cir.1989); *United States v. Franco,* 909 F.2d 1042, 1045 (7th Cir.1990); *United States v. Spillman,* 924 F.2d 721, 725 (7th Cir.1991). Trussel has not suggested how the district court's refusal to depart in this case violated any law.

■ Trussel raises two other arguments, both concerning her sentence. First, Trussel argues that the district court was too parsimonious in reducing her offense level because of her mitigating role in the offense. See U.S.S.G. § 3B1.2. The court did reduce Trussel's offense level by two points for being a minor participant in Barker's conspiracy. See U.S.S.G. § 3B1.2(b). But Trussel contends the court should have granted her the four-level reduction for "minimal" participation, U.S.S.G. § 3B1.2(a), or, at least, the three-level reduction for involvement falling somewhere between "minor" and "minimal."

■ A district court's decision that a person is a "minor" or "minimal" participant in a crime is a factual question that we review for clear error. *United States v. Navarez,* 954 F.2d 1375, 1382 (7th Cir. 1992). Trussel knowingly allowed Barker to use her home to store marijuana and cocaine and to conduct at least one drug sale. On four or five other occasions, Trussel sold cocaine from her home for Barker. It is doubtful that the district court would have clearly erred if it had decided that Trussel was not even worthy of the two-point reduction for being a "minor" participant in Barker's conspiracy; it certainly

was not clear error to decide that her participation was not minimal.

■ Trussel also argues that the district court erred in determining her offense level by adding the amounts of cocaine and marijuana Barker sold or stored in her home. Trussel points out that in illustrating how the addition of different drugs works, application note 10 to guideline § 2D1.1 uses examples of defendants convicted of *selling* different types of drugs. See, e.g., application note 10(c), which uses the example of a defendant convicted "of selling 80 grams of cocaine ... and five kilograms of marihuana." She reasons from this that adding different types of drugs is proper only for sales of those drugs; since there was no evidence she sold the marijuana or cocaine, she contends it was wrong to add the two drugs' weights.

Trussel is wrong. Application note 6 to § 2D1.1 provides that in determining a defendant's offense level "[w]here there are multiple transactions *or* multiple drug types, the quantities *are to be added.*" (Emphasis added.) This language is clear and does not distinguish between sale or possession; indeed, any such distinction would be contrary to the application note's use of the disjunctive, "multiple transactions *or* multiple drug types." That the Sentencing Commission chose to use examples of drug sales to illustrate how the addition of different drugs works does not change the clear language of application note 6. Moreover, Trussel's approach would under-assess the seriousness of possession offenses involving various drugs where the offenders are arrested before they can sell the drugs. That makes little sense. The district court did not err in determining Trussel's offense level.

## III.

For the reasons set forth above, the district court's decisions in Barker's and Trussel's cases are

AFFIRMED.