See also 808 F.Supp. 596, 808 F.Supp. 607, 808 F.Supp. 620, 808 F.Supp. 627, 808 F.Supp. 630.

**UNITED STATES of America, Plaintiff,**

v.

**Rufus SIMS, et al., Defendants.**

**No. 92 CR 166.**

United States District Court,
N.D. Illinois, E.D.

April 14, 1993.

Scott T. Mendeloff, Sean B. Martin, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Michael Gregory Logan, Chicago, IL, for defendant Rufus Sims.

Daniel S. Alexander, Durkin, Foster, Roberts & Barrett, Chicago, IL, for defendant Donald Moore.

Robert G. Clarke, Chicago, IL, for defendant Michael Stevens.

Standish E. Willis, Chicago, IL, for defendant Delwin Langston.

Richard S. Jalovec, Richard S. Jalovec & Associates, Chicago, IL, for defendant Dennis Gilliam.

Paul Augustus Wagner, Paul A. Wagner, Chicago, IL, for defendant William Burch.

Michael Gregory Logan, Chicago, IL, for defendant Timothy Henderson.

William J. Stevens, Chicago, IL, for defendant Darryl Young.

Paul Edward Paprocki, Chicago, IL, for defendant Joe Boyles.

Carl Peter Clavelli, Chicago, IL, for defendant Maurice Harmon.

Robert S. Bailey, Chicago, IL, for defendant Shawn Baker.

Linda Amdur, Chicago, IL, for Dennis Gilliam.

Keith Allan Spielfogel, Chicago, IL, for defendant Estella Sims.

Terence Patrick Gillespie, Marc William Martin, Genson, Steinback & Gillespie, Chicago, IL, for defendant Andrea Thomas.

Herbert Louis Goldberg, Giovannini & Goldberg, Sheldon Bart Nagelberg, Chicago, IL, for defendant Ruby Chambers.

Richard A. Halprin, Chicago, IL, for defendant Eric Smith.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Delwin Langston's motion to withdraw his plea of guilty pursuant to Rule 32(d) of the Federal Rules of Criminal Procedure. The court has carefully considered the parties' pleadings and the pertinent law. For the following reasons, Langston's motion is denied without a hearing.

### I. FACTS

Delwin Langston was charged in the indictment with narcotics conspiracy (Count One), RICO (Count Two), commission of aggravated battery in aid of racketeering (Count Four) and three counts of distribution of cocaine (Counts Five, Six, and Seven). Langston pled guilty to Count One before this court on November 13, 1992 pursuant to a plea agreement that required him to agree to provide substantial assistance to the government in return for a downward departure motion from the government. Pursuant to Rule 11(e)(1)(C), the parties agreed to a sentence of twenty years incarceration. Plea Agreement, at ¶ 12, 15. In addition, the government agreed to dismiss the remaining counts against the defendant, including the RICO count which carried potential criminal liability for the murder racketeering act. At the plea colloquy, the court accepted Langston's plea and entered a judgment of guilty. Transcript of Langston's plea colloquy dated November 13, 1992 ("Tr."), at 20.

The court held a seven week trial in this case that began on November 23, 1992 and ended on January 8, 1993. At the trial, the jury convicted defendant Richard Goldstein on all counts and acquitted defendant Eric Smith on the one count in which he was

charged. After the trial, on March 4, 1993, almost four months after he pled guilty, Langston filed a *pro se* motion to substitute counsel, alleging an irreconcilable conflict of interest with his current appointed counsel. The court granted Langston's motion and appointed new counsel. Langston now seeks to withdraw his guilty plea. Defendant has not yet been sentenced.

## II. *DISCUSSION*

■ Rule 32(d) provides, in relevant part, that prior to sentencing "the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." FED.R.CRIM.P. 32(d). It is the defendant's burden to prove such a reason exists. *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir.1992). Clearly, Langston "faces a heavy burden of persuasion." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987) (record created by a Rule 11 inquiry provides a "presumption of verity"). *See also United States v. Coonce*, 961 F.2d at 1276 (Rule 11 "provides a thorough hearing to determine the voluntariness and intelligence of guilty pleas, and ... defendants afforded such a hearing should not be easily let off the hook when they feel like changing their minds."); *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir.1992) ("A defendant who presents a reason for withdrawing his plea that contradicts the answers he gave at a Rule 11 hearing faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is 'fair and just' "). Langston has wholly failed to advance any fair and just reason.

Furthermore, in evaluating a motion to withdraw a plea under Rule 32(d), this court must be mindful of "the solemnity of the taking of the plea." *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845, *aff'd on remand*, 835 F.2d 687 (7th Cir.1987). In *Ellison*, the Seventh Circuit stressed the importance of preserving "the integrity of the plea-taking process." *Id.* (reasoning that Congress purposefully limited withdrawal of a plea to those situations where defendant demonstrates a fair and just reason). The Seventh Circuit stated:

Rule 11's provisions specifically seek to ensure that entry of a plea is not a mean-ingless act. Great care is taken when accepting pleas under Rule 11. Plea agreements are placed on the record, the voluntariness and accuracy of the plea is ascertained, and detailed advice is provided to the defendant concerning his rights and the consequences of his plea as well as a determination that defendant understands these matters.

*Id.* The court further noted that district courts must prevent guilty pleas from becoming "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, ... a guilty plea is no such trifle, but a 'grave and solemn act,' which is 'accepted only with care and discernment.' " *Id.* (*quoting* Rule 32(d) Advisory Committee Notes and *United States v. Barker*, 514 F.2d 208, 221 (D.C.Cir.1975)).

Keeping in mind the solemnity of the plea taking process and the "uphill battle" facing a defendant who wants to withdraw his or her plea, the court has carefully considered the arguments set forth by Langston. The court concludes that Langston's motion is woefully inadequate. Not only was Langston's motion devoid of any pertinent legal authority, the motion and attached affidavit failed to articulate any reason for allowing Langston to withdraw his plea of guilty. The court will address each contention set forth in Langston's affidavit and other factors that warrant denial of this motion.

### A. *Langston's Arguments*

Langston claims that he should be allowed to withdraw his guilty plea because it was unknowing, unintelligent, and involuntary. Langston raised none of these concerns with the court at the time of the plea. Furthermore, Langston's own statements made under oath at the plea colloquy belie his new contentions.

#### 1. *Erroneous Advice from Former Attorney*

First, Langston claims that his attorney misled him by advising him to "plead out" because he did not have a defense. Affidavit in Support of Motion to Withdraw Guilty Plea ("Langston's Affidavit"), at 1. Langston states that he could not understand that

"not having a defense" didn't matter because the government has the burden of proving him guilty beyond a reasonable doubt. *Id.* Furthermore, Langston contends that his *former attorney never told him that challenging witnesses' motives to testify can be a "defense."* *Id.* at 2.

The plea agreement and the plea colloquy, however, indicate that Langston fully understood his rights to challenge the motives of testifying co-defendants on cross-examination and put the government to its burden of proof without offering a defense at trial. In particular, Langston replied affirmatively when the court asked him under oath whether he understood that "Mr. Willis would have the right to cross-examine the government witnesses." Tr. at 7. With respect to Langston's understanding of the government's burden of proof, the colloquy is presumptively correct:

> COURT: Do you understand that at trial you would be presumed to be innocent and the government would be required to prove you guilty beyond a reasonable doubt before you could be found guilty and you would not have to prove that you were innocent?
>
> LANGSTON: Yes.

Tr. at 7. Shortly thereafter, Langston again acknowledged that he understood that the jury would have to find him guilty "beyond a reasonable doubt" and that he would waive the right to put the government to its proof by pleading guilty. Tr. at 8, lines 11–17. Thus, Langston's present claim directly contradicts his testimony at the plea hearing.

██ The Seventh Circuit has stated that "[a] judge is entitled to hold a defendant to statements made in open court and need not give him a hearing so that he may more readily contradict himself." *United States v. Roth,* 860 F.2d 1382, 1387 (7th Cir.1988) (citing *United States v. Ellison,* 835 F.2d 687, 693 (7th Cir.1987)). Thus, responses given under oath are entitled to a presumption of truthfulness. *United States v. Trussel,* 961 F.2d 685, 689 (7th Cir.1992). *See also United States v. Price,* 988 F.2d 712, 712 (7th Cir.1993) ("Voluntary responses made by a

defendant when entering a guilty plea are binding.") (citing *Trussel,* 961 F.2d at 689).

In addition to his testimony at the plea hearing, Langston signed and filed with the court a detailed written plea agreement in this case which further belies his instant claims of confusion. Langston's plea agreement states:

> Defendant understands that by pleading guilty he surrenders certain rights, including the following:
>
> (a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. . . .
>
> (b) . . . . The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt. . . .
>
> (d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

Plea Agreement, at ¶ 9. Furthermore, the defendant acknowledged in the plea agreement that by pleading guilty he would waive all the rights previously mentioned. *Id.* at ¶ 10.

To the extent Langston's affidavit launches an attack on the competence of his former attorney, Langston faces significant obstacles.[1] A claim of ineffective assistance of counsel must be reviewed under a two-part test. *United States v. Price,* Nos. 91 C 1257 & 91 C 1579, slip op. at 5 (7th Cir. March 10, 1993) (citations omitted). First, the defendant must establish that his counsel's conduct was "below an objective standard of reasonableness." *Id.* Second, the defendant must show that the deficient performance prejudiced the defense. To show prejudice, courts have required defendants to show that "there is a reasonable probability that, but

---

1. Langston did not squarely present his arguments concerning his attorney's alleged incompetence as a claim of ineffective assistance of counsel but rather as part of his motion to with-

draw his guilty plea. Nonetheless, in the interest of completeness, the court will consider the issue of the Sixth Amendment right to counsel at this time.

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland v. Washington,* 466 U.S. 668, 687–95, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984)). The Supreme Court recently clarified the second prong of the *Strickland* test in *Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), where the Court stated that the focus is not merely whether the outcome would have been different, but "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart,* —— U.S. at ——, 113 S.Ct. at 844. The court stated further that "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* Thus, the defendant bears a difficult burden to show ineffective assistance of counsel.

■ Langston has met neither prong of the two-part test. First, he has offered no evidence that prior counsel's handling of the case fell below an objective standard of reasonable conduct. Langston fails to explain why counsel's advice that Langston "did not have a defense" is wrong except to argue that his former attorney should have told him that he did not need a defense because the government must prove defendants guilty beyond a reasonable doubt. However, such advice would have been misleading, if not erroneous, in light of the evidence the government would have presented at trial. Tr. at 13–16. Furthermore, Langston has not identified any affirmative defense he does have. Second, Langston has shown no prejudice from the alleged incompetence of his former attorney. Langston has not shown that he would have gone to trial if counsel had explained the government's burden of proof and the defendant's right to cross-examine government witnesses. To the contrary, in light of the evidence the government had compiled against Langston[2] and the potential sentence of mandatory life imprisonment Langston faced if convicted, it cannot be reasonably posited that Langston would have rejected his Rule 11(e)(1)(C) plea agree-

ment whereby he would receive twenty years in prison.

Furthermore, Langston cannot show that he was prejudiced by his former attorney's performance as that standard was clarified in *Lockhart* since the defendant has not been deprived of any substantive or procedural right to which the law entitles him. As the Supreme Court stated in *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), conscious waiver is not necessary with respect to each potential defense relinquished by a plea of guilty. *Id.* at 573–74, 109 S.Ct. at 764–65. Rather, "[r]elinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty." *Id.* In *Broce,* the "trial court complied with Rule 11 in ensuring that respondents were advised that, in pleading guilty, they were admitting guilt and waiving their right to a trial of any kind." *Id.* The court further stated that absent a valid claim of ineffective assistance of counsel, counsel's failure to provide advice "cannot serve as the predicate for setting aside a valid plea." *Id.* Therefore, Langston suffered no prejudice even if counsel told Langston he had no viable defense.

### 2. *Pressure from the Assistant U.S. Attorney*

■ Second, Langston claims that Assistant United States Attorney Scott Mendeloff "pressured" him by asking Langston at least three times if he would like to proceed while they waited for approximately an hour and a half for Langston's former attorney. The government denies that AUSA Mendeloff exerted any undue "pressure" on Langston to plead guilty. Nonetheless, even if Langston's statements are true, Langston resisted any "pressure" and told Mendeloff that he did not want to go ahead with the plea without his lawyer present. Furthermore, Langston's sworn statements at the plea colloquy show there was no coercion by Mr. Mendeloff or anyone in this case:

---

**2.** See Government's Response, at 18–20, for a summary of the evidence against Langston. *See*      *also* Tr. at 13–16.

COURT: Mr. Langston, has anyone forced you in any way to cause you to plead guilty?

LANGSTON: No.

COURT: Has anyone threatened you in any way to cause you to plead guilty?

LANGSTON: No.

COURT: Apart from the plea agreement, have any promises been made to you to cause you to plead guilty?

LANGSTON: No.

COURT: Is your decision to plead guilty entirely voluntary?

LANGSTON: Yes, it is.

Tr. at 12. In addition, the plea agreement which Langston signed and told the Court he had read, stated: "Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this agreement, to cause defendant to plead guilty." Plea Agreement, at ¶ 16. Thus, the defendant has not shown that the "threats" were the reason he decided to plead guilty or that he would have insisted on a trial but for the alleged pressure from the AUSA.

### 3. Coercion

Third, Langston contends that on the day of the plea he felt coerced because he was rushed and did not have enough time to explain all of his concerns to his attorney. Langston's Affidavit, at 2. Langston claims he signed the plea agreement without reading it. *Id.* Langston also claims he was intimidated by the formality of the proceedings: "Once I was in court, I did not feel I could say no and back out. The court was very formal and I've always been polite and obedient. I just couldn't tell the court I changed my mind." Langston's Affidavit, at 3.

These contentions are without merit. Langston does not specify what "concerns" he wanted to convey to his former attorney and how or whether they would have affected his decision to plead guilty. More importantly, Langston's present claims contradict his testimony during the plea colloquy:

COURT: Mr. Langston, you are here with your attorney; is that correct?

LANGSTON: Yes, I am.

COURT: Have you had an opportunity to discuss your change of plea with your attorney?

LANGSTON: Yes.

COURT: Are you satisfied with the advice and efforts of your attorney in you [sic] behalf?

LANGSTON: Yes.

Tr. at 4–5. Then in response to the court's specific inquiry, Langston indicated that he had read Count One of the indictment and discussed it with his attorney. Tr. at 5. Langston told the court he understood the nature of the charges against him and that he had discussed the charges to which he intended to plead guilty with his attorney. Tr. at 6. With respect to reading the plea agreement before signing it Langston provided the following testimony:

COURT: The record should reflect that I have been tendered a written plea agreement in this case with respect to Mr. Langston.... Is this your signature which appears on page 12 of the plea agreement above that of your attorney Mr. Willis?

LANGSTON: Yes.

COURT: Did you read this document before you signed it?

LANGSTON: Yes, I did.

COURT: Did you discuss the plea agreement with Mr. Willis before you signed it?

LANGSTON: Yes.

Tr. at 9.

Obviously the defendant's testimony at the plea hearing contradicts his present claims. The defendant provides no excuse for the contradiction except to state that his former attorney advised him that the judge would ask him questions to which he should answer "yes". Langston's Affidavit, at 2. Besides the obvious fact that affirmative responses are not appropriate and were not given for all of the court's questions, as previously mentioned, a defendant's sworn testimony is given a "presumption of truthfulness." *United States v. Trussel,* 961 F.2d 685, 689 (7th Cir.1992). The court has found no reason to discredit the testimony given at the plea hearing or to believe that Langston's re-

sponses were anything but informed and voluntary.

Furthermore, there is no evidence in the record that anyone "rushed" the defendant to do anything. Therefore, Langston's subjective impression of feeling rushed does not justify withdrawing his plea. "If subjective impressions, however irrational and unfounded, were enough, any defendant could claim them and thus secure tactical advantages by pleading guilty and delaying his withdrawal motion to a point where retrial would be onerous or impossible for the government." *United States v. Barker*, 514 F.2d 208, 224 (D.C.Cir.), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975).

### B. General Considerations

The court finds the arguments set forth in the defendant's motion and affidavit devoid of merit. Therefore, the court denies the instant motion. In addition, other factors present in this case bolster the·court's ·conclusion. For example, Langston's delay in filing the instant motion and failure to assert his innocence are telling factors to consider. . Furthermore, the court may consider the substantial inconvenience that will be imposed upon the court if Langston's case proceeds to trial at this time.

### 1. Timing

■ In assessing the appropriateness of a motion to withdraw a guilty plea, the court must consider the amount of time the defendant allowed to elapse between the entry of the plea and the filing of the motion to withdraw. When a defendant moves immediately to withdraw his or her plea, courts view that fact as probative evidence of a flawed plea since such swiftness might indicate that the plea was entered in haste and confusion. *United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.), *cert. denied*, 421. U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). Where a defendant waits a substantial period of time before filing, however, courts consider it likely that other illegitimate factors are motivating the defendant's change of heart. As the drafters of Rule 32(d) noted,

> A swift change of heart is itself strong indication that the plea was entered in haste and confusion.... By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support ·withdrawal must have considerably more force.

Rule 32(d), Advisory Committee Notes, *quoting United States v. Barker,* 514 F.2d 208, 221 (D.C.Cir.1975) ("swift change of heart" meant "a day or so" would elapse before the defendant files a motion to withdraw).

In the instant case, approximately four months have elapsed between the date the court accepted Langston's plea of guilty and the time he filed the instant motion to withdraw the plea. Although this passage of time is not dispositive, its coincidence closely on the heels of the acquittal of codefendant Eric Smith makes Langston's motion look like "an impermissible *post hoc* fiction created by defendant Langston in response to the acquittal." Government's Response to Defendant's Motion to Withdraw Guilty Plea ("Government's Response"), at 3.

### 2. Assertion of Innocence

■ Whether the defendant has asserted his innocence is an important factor to be weighed. *Barker*, 514 F.2d at 220. It is "fundamental hornbook law that a defendant who pleads guilty forgoes his opportunity to prove his innocence. *Cf. North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). If a guilty plea can be withdrawn merely because the defendant would like to regain that opportunity, the plea becomes meaningless." *Barker*, 514 F.2d at 226, n. 17. *See also, United States v. Ray*, 828 F.2d 399, 422 (7th Cir.1987) (a "fair and just reason for withdrawing a guilty plea must be more than a 'conclusory reassertion of innocence' ") (citations omitted), *cert. denied*, 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988). Thus, an assertion of innocence does not necessarily justify withdrawal of a guilty ·plea. In the instant case, however, Langston does not even assert that he is innocent of the crime charged; rather he makes the bald assertion that he failed to understand the consequences of pleading guilty in. spite of repeated attempts to inform him.

**1206**

### 3. *Inconvenience*

■ Whether the court would incur "substantial inconvenience" as a result of a defendant withdrawing his or her guilty plea is also a relevant factor to consider in deciding a motion to withdraw. *Barker,* 514 F.2d at 220; *Pelletier v. United States,* 350 F.2d 727, 728 (D.C.Cir.1965) ("considerations of judicial administration must be balanced along with a Defendant's interest"); *Everett v. United States,* 336 F.2d 979, 984 (D.C.Cir.1964) (stating "[w]e are not disposed to encourage accused persons to 'play games' with the courts at the expense of already over burdened calendars"). If ever there was a case where re-trial would impose a "substantial inconvenience" upon the court, this case is the prototype. As the government points out, during the seven-week trial, the government called approximately fifty witnesses (some from out of state and some hidden for protection) and introduced hundreds of exhibits. For the government to recall all of its witnesses and retry this case would constitute a burden on the government and on this court of the highest order. Although such inconvenience is not conclusive, it is a factor to be considered, particularly where the defendant offers only vague allegations of coercion and confusion in support of a motion to withdraw filed several months after his plea of guilty.

These general considerations buttress the court's conclusion that Langston's motion should be denied.

### C. *Evidentiary Hearing*

■ No evidentiary hearing is required on Langston's motion to withdraw his plea in light of the extensive Rule 11 inquiries made by the court before accepting his plea. *United States v. Fountain,* 777 F.2d 351, 358 (7th Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986); *United States v. Thompson,* 680 F.2d 1145, 1152 (7th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Stitzer,* 785 F.2d 1506, 1514 (11th Cir.), *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986). Furthermore, a court "must grant an evidentiary hearing only when the defendant's motion presents a 'fair and just' reason for withdrawing his plea." *United States v. Trussel,* 961 F.2d 685, 689 (7th Cir.1992). The court had a full and actual opportunity to observe Langston during the extensive Rule 11 hearing and is satisfied that Langston voluntarily and intelligently entered his plea. Therefore, no evidentiary hearing is required.

### III. CONCLUSION

As the Seventh Circuit recently stated, "[a] defendant does not have an absolute right to withdraw his guilty plea, and the decision whether to allow him to do so is with the sound discretion of the trial court." *United States v. Price,* Nos. 91 C 1257 & 91 C 1579, slip op. at 7 (7th Cir. March 10, 1993) (citing *United States v. Caban,* 962 F.2d 646, 649 (7th Cir.1992)). The defendant has not shown that any "fair and just reason" exists justifying his request for withdrawal. Accordingly, defendant Delwin Langston's motion to withdraw his plea of guilty pursuant to Rule 32(d) of the Federal Rules of Criminal Procedure is denied.