2 F.3d 1153
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eric L. PRYOR, Defendant-Appellant.
 No. 92-2873.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 19, 1993.
Decided Aug. 18, 1993.
 
 1
 Before CUDAHY and MANION, Circuit Judges, and HOLDERMAN, District Judge.[1]
 
 ORDER
 
 2
 Defendant-appellant Eric L. Pryor pleaded guilty, before District Judge John C. Shabaz, to a charge of cocaine distribution. Before sentencing, Mr. Pryor filed a motion to withdraw his plea, which the district court denied. Defendant appeals the district court's denial of his motion. We affirm.
 
 Background
 
 3
 Fed.R.Crim.P. 32(d) provides that, before sentencing, a court may permit the withdrawal of a plea "upon a showing by the defendant of any fair and just reason." Defendant contends that the "fair and just reason" warranting the withdrawal of his plea was the fact that he made his decision to plead guilty on the basis of inaccurate information given to him the by the district court's Probation and Pretrial Office as to the application of the Sentencing Guidelines to the facts of his case.
 
 
 4
 In the affidavit which defendant submitted to the district court in support of the motion to withdraw his plea, Mr. Pryor stated, inter alia, that:
 
 
 5
 2. Shortly before the scheduled trial date of June 1, 1992, I chose to give up my right to force the government to prove my guilt beyond a reasonable doubt ... because I was told by my attorney ... that the Probation and Pretrial Office had determined that I did not qualify for Career Offender status under the Federal Sentencing Guidelines.
 
 
 6
 3. Shortly after I gave up the right to a jury trial and pled guilty, I learned that Ms. Spinelli now felt that she had made an error in determining that I did not qualify for Career Offender status.
 
 
 7
 4. I relied upon Ms. Spinelli's initial error in deciding to plead guilty. I now respectfully request the Court allow withdrawal of my plea.
 
 
 8
 The erroneous interpretation to which Mr. Pryor referred related to how his 1985 robbery conviction in Georgia would impact his potential classification as a Career Offender under U.S.S.G. ("Guideline") Sec. 4B1.1. The district court's Probation and Pretrial Office's Guidelines Specialist Ms. Leslyn Spinelli initially told an Assistant United States Attorney ("AUSA") that, pursuant to Guidelines Sec. 4A1.2(d) and its commentary, the 1985 offense, which Mr. Pryor committed at the age of seventeen, would not be considered for purposes of determining his Career Offender status. The AUSA apparently passed on this interpretation to defendant's attorney.
 
 
 9
 After defendant pleaded guilty, Ms. Spinelli and the United States' Attorney's Office reconsidered their interpretation and concluded that, pursuant to Guideline Sec. 4A1.2(d)(1), Mr. Pryor's previous Georgia conviction should be counted for purposes of determining his criminal history since defendant was convicted and served his sentence as an adult, not a juvenile, under Georgia law.[2] When Mr. Pryor learned that the assessment of his criminal history had changed, he sought to withdraw his plea.
 
 
 10
 Addressing defendant's motion, Judge Shabaz noted the answers which Mr. Pryor had given under oath to the court's questions at the guilty plea hearing, and concluded that these responses contradicted defendant's contention that he pleaded guilty on the basis of his understanding that he would not be sentenced as a Career Offender. The district court ruled that the proffered reasons for the withdrawal of the plea were therefore not "fair and just" as is required by Fed.R.Crim.P. 32(d).
 
 Discussion
 
 11
 Fed.R.Crim.P. 32(d) does not give a defendant an absolute right to withdraw a guilty plea. See e.g., United States v. Price, 988 F.2d 712, 717 (7th Cir.1993). The decision whether to allow him to do so is within the sound discretion of the trial court. Id. A trial court's denial of a motion to withdraw a plea will only be reversed upon a showing that the court abused its discretion. Id. Thus, a defendant must show that a fair and just reason exists justifying his request for withdrawal and that the district court's findings to the contrary are clearly erroneous. Id., citing United States v. Caban, 962 F.2d 646, 649 (7th Cir.1992).
 
 
 12
 In denying Mr. Pryor's motion to withdraw his plea, Judge Shabaz appropriately focused on the answers given by defendant at the guilty plea hearing held pursuant to Fed.R.Crim.P. 11. Voluntary responses made by a defendant when entering a guilty plea are binding. United States v. Trussel, 961 F.2d 685, 689 (7th Cir.1992). A defendant who offers a reason for withdrawing his guilty plea that contradicts the answers he gave at a Rule 11 hearing faces "an uphill battle" in persuading the judge that his purported reason for withdrawing his plea is "fair and just." Id.; see also United States v. Price, 988 F.2d at 717.
 
 
 13
 At the plea hearing, Judge Shabaz asked the following questions and defendant, under oath, gave the following answers:
 
 
 14
 Q. And is this document the document which you believe to be the plea agreement in this matter?
 
 
 15
 A. Yes, sir.
 
 
 16
 Q. And are the provisions of this letter all of the terms of the plea agreement with the Government as you understand them?[3]
 
 
 17
 A. Yes, sir.
 
 
 18
 Q. Has anyone made any other or different promise or assurance to you of any kind in an effort to induce you to enter a plea of guilty?
 
 
 19
 A. No, sir.
 
 
 20
 Q. Has anyone made any promise or assurance to you of any kind to include any force which has been used upon you or any coercion to which you have been suggested in any way attempting to force you to enter a plea of guilty to Count 3 of the Indictment?
 
 
 21
 A. No, sir.
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 Q. Do you understand that this count to which you will be pleading guilty carries a minimum sentence of ten years in prison?
 
 
 25
 A. Yes, sir.
 
 
 26
 Q. And do you further understand that it has a maximum period of life imprisonment?
 
 
 27
 A. Yes, sir.
 
 
 28
 Q. And so that the range in this matter is ten years to life?
 
 
 29
 A. Yes.
 
 
 30
 Q. Do you understand that?
 
 
 31
 A. Yes, sir.
 
 
 32
 * * *
 
 
 33
 * * *
 
 
 34
 Q. Do you understand further that the offense conduct involves more than five grams of a cocaine base substance and that the minimum sentence of ten years' imprisonment is due to your prior conviction of a controlled--is it a Controlled Substances Act of which you have been previously convicted?
 
 
 35
 A. Yes, sir.
 
 
 36
 Q. And was that the one which we heard about on Friday as it concerns the Atlanta, Georgia incident?
 
 
 37
 A. Yes, sir.
 
 
 38
 Q. And then there was another one, a robbery in about 1985 which we also heard about?
 
 
 39
 A. Yes, sir.
 
 
 40
 Q. And you understand that there was a request for enhancement in this matter by the Government?[4]
 
 
 41
 A. Yes, sir.
 
 
 42
 Q. Now, then do you understand that the sentence which you will receive is within the sole discretion of the Court and that you have further acknowledged the Court is free to consider your entire pattern of conduct and not just the information relating to Count 3 of the Indictment to which you are pleading guilty? Do you understand that?
 
 
 43
 A. Yes, sir.
 
 
 44
 Q. In other words, this Court is required by law to consider all relevant conduct, and this refers to relevant conduct. Do you understand that?
 
 
 45
 A. Yes, sir.
 
 
 46
 Q. Do you further understand and acknowledge that your entire pattern of conduct then will be brought to the Court's attention and, most importantly, will be used by the Court in determining the appropriate sentence under the Guidelines?
 
 
 47
 A. Yes, sir.
 
 
 48
 * * *
 
 
 49
 * * *
 
 
 50
 Q. Do you understand that the United States has made no promises or guarantees concerning the sentence to be imposed?
 
 
 51
 A. Yes, I did.
 
 
 52
 Q. Do you understand also the Court is not required to accept the recommendations made by the United States and is free to impose any sentence up to and including the maximum penalties which we have previously discussed?
 
 
 53
 A. Yes, sir.
 
 
 54
 Q. Do you have a recollection of any discussion you've had with Mr. Collins concerning the subject of Sentencing Guidelines?
 
 
 55
 A. What you mean? Do I--
 
 
 56
 Q. Did you discuss anything called Sentencing Guidelines with Mr. Collins?
 
 
 57
 A. Yes, I did.
 
 
 58
 Q. And do you understand that under federal law the United States Sentencing Commission has issued Guidelines for judges to follow in determining sentences in criminal cases? Is that your understanding?
 
 
 59
 A. Yes, sir.
 
 
 60
 Q. Do you understand the Court will not be able to determine the Guideline sentence for your case until after a Presentence Report has been completed and both you and the Government have had the opportunity to challenge the facts reported by the probation officer?
 
 
 61
 A. Yes, sir.
 
 
 62
 Q. Do you further understand that, after it has been determined what Guideline applies to the case, the sentencing judge then does have the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the Guidelines?
 
 
 63
 A. Yes, sir.
 
 
 64
 * * *
 
 
 65
 * * *
 
 
 66
 Q. Now, it may be, Mr. Pryor, that you are anticipating a certain sentence; that is, that you believe a certain sentence will be imposed at time of sentencing. Now, I want you to understand that, if the sentence is more severe than you expect, you are still bound by your plea and will have no right to withdraw it. Do you understand that?
 
 
 67
 A. Yes, sir.
 
 
 68
 Q. And do you further understand, if the Court does not accept any sentencing recommendation in your plea agreement, you are still bound by your plea and will have no right to withdraw it? Do you understand that?
 
 
 69
 A. Yes, sir.
 
 
 70
 (See Transcript of Proceedings of June 1, 1992, pp. 5-9, 15-17.)
 
 
 71
 Upon this record, Judge Shabaz did not abuse his discretion or clearly err in finding that Mr. Pryor's proffered reason for wanting to withdraw his plea was inconsistent with his sworn testimony and was therefore not "fair and just." As discussed in United States v. Scott, 929 F.2d 313, 315-316 (7th Cir.1991), a defendant's "incorrect estimates" and disappointed "secret expectations" as to potential sentences do not justify the withdrawal of a plea, when those estimates and expectations do not accord with sworn plea hearing testimony. At the plea hearing, Mr. Pryor stated that his guilty plea was not based on any assurances given by any party and expressed his understanding that the determination of his sentence was entirely in the hands of the judge and could be as high as the statutory maximum of life imprisonment. He further stated his awareness that the Guidelines calculations in his case had not been completed and that he knew that he would not be able to withdraw his plea if his sentence were more severe than expected. In light of this testimony, defendant's belief that he would not be classified as a Career Offender amounts only to an "incorrect estimate" or a disappointed "secret expectation" as to his sentence, such as would not justify withdrawal of his plea. The district court's denial of defendant's motion to withdraw his plea should consequently not be disturbed.
 
 
 72
 As an alternative argument, Mr. Pryor asserts that he was denied effective assistance of counsel in connection with his plea hearing. According to Mr. Pryor, his trial counsel provided ineffective assistance by 1) failing to inform the district court that defendant was pleading guilty in reliance upon the information provided by the Probation and Pretrial Office; and 2) by failing to advise Mr. Pryor that the Guideline Specialist might change her mind after he pled guilty and that, if this occurred, he would be bound by his plea.
 
 
 73
 Mr. Pryor raises his ineffective assistance of counsel argument for the first time on appeal. This court has repeatedly held that ineffective assistance claims are best dealt with initially at the district court level through a motion for a new trial or through the collateral relief available under 28 U.S.C. Sec. 2255. See e.g., United States v. Mojica, 984 F.2d 1426, 1452 (7th Cir.1993) (citing cases). One reason for this preference is that the district court, unlike the appellate court, has had the opportunity to observe counsel's performance firsthand. Id. Further, when an ineffective assistance claim is first raised on appeal, there typically has been no chance to develop and include in the appellate record evidence relative to the ineffectiveness issue. Id.
 
 
 74
 In this case, the record is not developed insofar as it pertains to issues implicated by defendant's ineffective assistance argument. In particular, there is no evidence in the record concerning the advice that counsel may or may not have given defendant. Moreover, the district court's greater familiarity with the circumstances of the case better enables it to evaluate in the first instance the questions of whether counsel's performance comported with range of competence expected of attorneys and whether the defendant suffered prejudice as a result of counsel's alleged errors. Strickland v. Washington, 466 U.S. 668 (1984).
 
 
 75
 Consequently, the court declines to address defendant's ineffective assistance claim. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Honorable James F. Holderman, District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [2]
 The Probation and Pretrial Office's first interpretation of Mr. Pryor's status under the Guidelines was apparently based on a reading of Note 7 of the Commentary to Guideline Sec. 4A1.2, which, in its last sentence, states that "To avoid disparities from jurisdiction to jurisdiction in the age at which a defendant is considered a 'juvenile,' this provision applies to all offenses committed prior to age eighteen." The Guidelines Specialist construed this sentence to indicate that all offenses committed prior to the age of eighteen are subject to the five year time period set forth at Guideline Sec. 4A1.2(d)(2). Application of the five year limitation period would place Mr. Pryor's 1985 conviction outside the range of consideration in determining his status under the Guidelines. After Mr. Pryor's plea, the Guidelines Specialist revisited the issue and determined that, under Guideline Sec. 4A1.2(d)(1), the five year time period does not apply if the "juvenile" defendant was, like Mr. Pryor, convicted and sentenced as an adult. (See June 19, 1992 Letter of Leslyn Spinelli to Jeffrey Collins.)
 
 
 [3]
 Mr. Pryor's Plea Agreement did not refer to any understanding relating to his potential classification as a Career Offender. The Agreement specifically stated that "the court is free to impose any sentence, up to and including the maximum penalties set out above."
 
 
 [4]
 Pursuant to 21 U.S.C. Sec. 851, the government notified defendant that it would seek an enhancement of his sentence under 21 U.S.C. Sec. 841 based on the 1985 robbery conviction