**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tony SILVA, Defendant–Appellant.**

No. 96–4026.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1997.

Decided Aug. 18, 1997.

Ellen J. Durkee, Jeffrey C. Dobbins (argued), Department of Justice, Land & Natural Resources Division, Washington, DC, for Plaintiff–Appellee.

David P. Schippers (argued), Schippers & Bailey, Chicago, IL, for Defendant–Appellant.

Before RIPPLE, KANNE and DIANE P. WOOD, Circuit Judges.

RIPPLE, Circuit Judge.

In this direct criminal appeal following a guilty plea, Tony Silva challenges the district court's decision to deny his motion to withdraw that plea. He also submits that the court made several errors in the sentencing process. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

I

BACKGROUND

A. *Facts*

Defendant Tony Silva, an internationally recognized expert on rare birds, pleaded guilty to two counts of a multi-count indictment: (1) conspiracy to knowingly import, transport and sell wildlife; *see* 18 U.S.C. §§ 2, 371, 545; 16 U.S.C. § 3372(a)(1),(4); 16 U.S.C. § 3373; and (2) knowingly filing a false income tax return for 1988, *see* 26 U.S.C. § 7206(1). Although Mr. Silva gave a radically different account in the affidavit that he filed in support of his motion to withdraw his plea, we set forth here, in abbreviated fashion, the facts that he admitted both in his plea agreement and in the Rule 11 colloquy conducted at the time that he entered his guilty plea. *See* Fed.R.Crim.P. 11.

Between 1986 and 1991, Mr. Silva conspired with Gila Daoud (his mother), Hector Ugalde, Gisela Caseres, and several unindicted co-conspirators (Horacio Cornejo, Larry Lafeber, Mario Trabaue and others) to smuggle protected parrots and macaws into the United States. Cornejo obtained many of these birds illegally in South American countries and sold them to Lafeber. Lafeber would then ship them to the United States. One of Cornejo's sources was Caseres, who smuggled the birds from Paraguay or Brazil to Argentina. The shipments of illegal birds were commingled with shipments of legal birds. Mr. Silva and Lafeber then separated the shipments at the quarantine station and removed the illegal birds while the United States Department of Agriculture employee was distracted. Mr. Silva then sold them to purchasers who were unaware that the birds had been imported illegally and had not been quarantined.

Between 1986 and late 1988, Mr. Silva and Lafeber sometimes used other South American exporters to smuggle in Hyacinth Macaws, Golden Conures, Red-fronted Macaws, Vinaceous Amazons, Toco Toucans and other birds. In 1989, Mr. Silva purchased a number of Hyacinth Macaws that Caseres had captured in the wild and provided the funds

for Caseres to keep them and then to bring them to Mexico. Mr. Silva recruited others, including Ugalde, to bring the macaws across the Mexican border without going through customs or quarantine. In April 1989, Mr. Silva moved to Tenerife to serve as Curator of Birds at Loro Parque. However, until at least 1991, he continued his efforts to import into the United States the macaws that Caseres was holding for him.

In his plea agreement, as well as at the Rule 11 inquiry, Mr. Silva admitted that he willfully filed a tax return for 1988 that understated his gross receipts from his business of selling birds. He also admitted to specific relevant conduct between 1989 and 1991: the illegal sale of two Queen of Bavaria Conures, seven Blue-throated Conures, three Crimson-bellied Conures, three Yellow-shouldered Amazons, and two Red-vented Cockatoos; and the underreporting of gross receipts for the years 1986–90.

### B. *Proceedings in the District Court*

Trial of this case had been postponed in order to permit the parties to complete their negotiations on the guilty plea agreement. In December 1995, the parties had told the court they were close to agreement; therefore the court struck a January trial date. Nevertheless, when by mid-January the parties had not yet reached an agreement, the court set trial for February 20, 1996. The government proposed a final plea agreement offer to which Mr. Silva agreed on January 30. He pleaded guilty to one conspiracy count and one count of filing a false income tax return. The district court conducted an extensive Rule 11 colloquy and determined that Mr. Silva's plea was knowing, intelligent and voluntary. As we have noted already, in the course of that inquiry, Mr. Silva agreed with the court that the facts supporting the plea were correct. The only matters left unresolved related exclusively to the sentence.

A sentencing hearing was held in due course. After three days of testimony (from Mackman, Ugalde and Lafeber), Mr. Silva moved to withdraw the guilty plea. In his affidavit filed in support of the withdrawal, Mr. Silva asserted that, upon his move to the Canary Islands in 1989, his participation in efforts to bring the birds to the United States ceased. After that time, he claimed, he merely pretended to help smuggle birds for James Mackman, who was a government informant, so that Mackman would not abandon Mr. Silva's birds while he was in the Canary Islands.

After the parties had briefed the issue, the district court denied the motion. In its ruling, the court expressed its belief that the account given by Mr. Silva when he entered his plea was an accurate rendition of what had occurred. The court noted that Mr. Silva had given no reason for setting aside that version, which was corroborated by the testimony of the witnesses who had testified at the sentencing hearing. It found Mr. Silva's later affidavit account to be incredible. Specifically, the court concluded that there was one conspiracy between Mr. Silva and Daoud (the buyers) and Caseres (the supplier) to import birds for profit; "only the method of getting them into the country and the people used to help in the process and the ultimate end buyers differed." R.139 at 13–14. The district court also found no evidence to support Mr. Silva's entrapment claim that Mackman induced him to commit the crimes. With respect to the charge that he had filed a false tax statement, the court found incredible his explanation that the income attributed to him was in fact income received by Lafeber.

The sentencing hearing then continued five more days. On November 18, 1996, the court determined that the government had proved that wildlife of a value more than $1 million had been involved in Mr. Silva's schemes; that Mr. Silva's offense level should be increased by four levels as an organizer of criminal activity involving five or more persons; and that he was not entitled to a two-level decrease for acceptance of responsibility. Mr. Silva's resulting offense level was 27; the court imposed a sentence of 82 months' imprisonment.

## II

## DISCUSSION

### A. *The Motion to Withdraw Guilty Plea*

We review the decision of a district court to deny a motion to withdraw a guilty

plea for an abuse of discretion. *United States v. Messino*, 55 F.3d 1241, 1247 (7th Cir.1995). The court's discretion is guided by Rule 32(e) of the Federal Rules of Criminal Procedure, which provides that "the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." *See United States v. Hyde*, — U.S. —, —, 117 S.Ct. 1630, 1635, 137 L.Ed.2d 935 (1997) (discussing "fair and just reason" standard). In applying this standard, the district court was on solid ground with respect to both its understanding of the governing legal principles and its assessment of the facts. With respect to the governing legal principles, the court realized that a guilty plea, validly entered in accordance with the strict requirements of Rule 11 of the Federal Rules of Criminal Procedure, ought not be lightly discarded. As Justice Stewart put it in an analogous context, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). In *United States v. Groll,* 992 F.2d 755 (7th Cir.1993), Judge Cudahy, writing for the court, emphasized that, in evaluating a motion to withdraw a plea of guilty, a district court should evaluate the proffered reasons for the withdrawal against the testimony and other evidence introduced at the Rule 11 hearing, which have "a presumption of verity." *Id.* at 758; *accord United States v. Trussel,* 961 F.2d 685, 689 (7th Cir.1992). Of course, we have never implied that a motion to withdraw a plea that is substantiated by evidence can be dismissed out of hand. In such a circumstance, the district court, depending upon the situation presented by the particular case, must permit the withdrawal of the guilty plea, conduct an evidentiary hearing, or deny the motion with an explanation as to why the evidence is insufficient or incredible. *Groll,* 992 F.2d at 758.

■ Here, the district court, presented with the motion to withdraw in the midst of the sentencing hearing, chose, prudently we believe, the latter course. First, the court found that Mr. Silva's statement that he pleaded guilty to the tax charge because he had been given false information was incredible. The court noted that the receipts in issue were his own and that Mr. Silva had given no credible reason as to why he could not have known at the time he entered his plea that the statements were false. Similarly, the district court found incredible Mr. Silva's assertion that there were actually two separate conspiracies, the earlier of which was now barred by the statute of limitations. He had admitted the contrary in entering his plea of guilty—a plea entered only after a long period of negotiation and consultation. For the same reason, held the district court, any defense of entrapment, in addition to being supported by only the assertions of Mr. Silva, was too late. *See Trussel,* 961 F.2d at 690. The facts were known to him at the time that he entered the guilty plea. There was no indication that the defendant's initial plea was the product of circumstances that would undermine confidence in the voluntariness or intelligence of that plea. *See United States v. Coonce,* 961 F.2d 1268, 1276 (7th Cir.1992).

Notably, in evaluating Mr. Silva's motion, the court did not rely only upon the weakness of his assertions but also on the fact that his account was contrary to all the other testimony that the court had heard. We must, of course, defer to the district court's estimation of the weight to attach to the evidence. *See id.* at 1275.

■ The district court was not dealing here with a serious allegation of newly discovered evidence or of a previously unknown or unavailable defense. Serious allegations of that character often require a more plenary examination. *See United States v. Morrison,* 967 F.2d 264, 268 (8th Cir.1992). Here, Mr. Silva's petition is more properly characterized, as the district court recognized, as a belated misgiving that he had overestimated the strength of the government's case. A defendant is not entitled to withdraw his plea merely because he has misapprehended the strength of the government's case or, upon reevaluation of the situation, can conceive of an arguable defense. See *Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970); *United States v. Nichols,* 986 F.2d 1199, 1203 (8th Cir.1993). We will not "degrade the otherwise serious act of pleading guilty into something akin to

a move in a game of chess." *Hyde*, —— U.S. at ——, 117 S.Ct. at 1634.

The decision of the district court to deny the motion to withdraw the guilty plea was hardly an abuse of discretion. It was grounded in a commonsense evaluation of the representations made in the motion in light of the unchallenged testimony presented at the Rule 11 hearing and of the witnesses heard by the court during the sentencing hearing.

### B. *Sentencing Matters*

Mr. Silva submits that the district court erred in its determination that he was the leader or organizer of the conspiracy and that he ought not be given a reduction in sentence for acceptance of responsibility. Upon examination of the record and the arguments of counsel, we cannot accept these contentions.

■ At the outset, we note that Mr. Silva's concern that the district court improperly relied upon untrustworthy hearsay without sufficient corroboration is without merit. It is clear that the district court was well aware that, although hearsay is admissible in sentencing procedures, the court ought to scrutinize carefully hearsay that is particularly suspect and not corroborated.

■ According to Mr. Silva, the court erred in deciding that he was an organizer or leader of the operation. He characterizes his role as merely a seller of birds and a helper in Lafeber's quarantine station. He also notes that he was an interpreter-intermediary between the English-speaking Lafeber and the Spanish-speaking Cornejo. The district court's determination as to the role played by Mr. Silva was based on the testimony of eight days of witnesses at the sentencing hearing. It is for the district court,

not this court, to make the appropriate credibility determinations.

■ Mr. Silva next claims he had accepted responsibility for his criminal activity and therefore deserved the decrease permitted by U.S.S.G. § 3E1.1. The district court, after hearing the argument of counsel, determined that the reduction was not warranted. The court concluded that, despite his plea of guilty, Mr. Silva denied his guilt in seeking to withdraw the plea[1] and to shift the blame to Mackman and the government for having entrapped him.[2] The court further found that he had not been truthful in his own testimony during sentencing and in his version of the offense submitted to the probation office.[3] The district court was entitled to make the credibility determinations that it made. They are supported by the record. The district court's decision not to award the reduction was well "within a zone of reasonable responses to the facts." *United States v. Gomez*, 24 F.3d 924, 926 (7th Cir.), *cert. denied*, 513 U.S. 909, 115 S.Ct. 280, 130 L.Ed.2d 196 (1994); *see also Koon v. United States*, —— U.S. ——, ——, 116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996).

### Conclusion

The judgment of the district court is affirmed.

**AFFIRMED**

---

1. An improper motion to withdraw a guilty plea is sufficient basis for withholding a finding of acceptance of responsibility. *Trussel*, 961 F.2d at 691.

2. Although contending that the "first conspiracy" was barred by the statute of limitations, Mr. Silva admits that he engaged in smuggling during this period. The government would therefore have had little difficulty in establishing his predisposition to engage in such activity in the "second

conspiracy" into which he allegedly was trapped. *See Trussel*, 961 F.2d at 690 (noting that an entrapment defense is unlikely to succeed when earlier activity demonstrates predisposition).

3. *See United States v. Sanchez–Estrada*, 62 F.3d 981, 987 (7th Cir.1995) (holding that lack of veracity in the defendant's version of the crime can be weighed in determining whether he has accepted responsibility for his actions).