UNITED STATES of America,
Plaintiff–Appellee,

v.

John D. UNDERWOOD, Defendant–
Appellant.

No. 98–1559.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 27, 1999.

Decided April 5, 1999.

Thomas P. Schneider, Daniel Sanderson (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Steven R. Kohn (argued), Milwaukee, WI, for Defendant–Appellant.

Before ESCHBACH, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Appellant John D. Underwood argues that the district court abused its discretion in denying his motion to withdraw guilty pleas to possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and conspiracy to commit money laundering, 18 U.S.C. § 1956(h), (a)(1)(A). We find no error and affirm.

## I.

Acting on a tip·from Underwood's girlfriend, authorities in Franklin, Wisconsin, executed a search warrant at his residence and discovered drug records, scales, four guns, and over a quarter-million dollars in currency. Three weeks later, in June 1997, a federal grand jury in Milwaukee returned a two-count Indictment charging Underwood in both counts with firearm offenses in violation of § 922(g). However, investigators continued probing Under-

wood's suspected drug trafficking, and he soon began negotiating a "package deal" to resolve the pending Indictment and halt the ongoing investigation. On October 4, 1997, Underwood agreed to plead guilty to one count of the Indictment and to a proposed, one-count Information charging him with conspiracy to commit money laundering in violation of § 1956(h), (a)(1)(A). In the written plea agreement Underwood acknowledged possessing the four guns and stipulated to receiving $410,000 in drug proceeds during the two-year conspiracy. The government agreed to recommend a downward adjustment under U.S.S.G. § 3E1.1 so long as Underwood continued to demonstrate acceptance of responsibility.

The government filed the Information on October 7, and the next day at his change-of-plea hearing Underwood entered guilty pleas both to the new charge and to Count One of the Indictment. With respect to the money laundering conspiracy, Underwood agreed during the plea colloquy that he enlisted nominee owners to conceal his interest in two vehicles bought for his drug business using a portion of cocaine-trafficking proceeds that exceeded $400,000. But Underwood balked when the government proffered in its factual basis that he also laundered some of the proceeds through nominee bank accounts.

On December 31 the assigned probation officer completed her Presentence Investigation Report ("PSR"). Although she tracked the parties' stipulations concerning base offense level and specific offense characteristics, the probation officer allowed no reduction for acceptance of responsibility and recommended a two-level increase under U.S.S.G. § 3C1.1 for obstruction of justice. Her report recounts that, after the change-of-plea hearing, Underwood not only offered his girlfriend money to recant but essentially denied any wrongdoing when the probation officer interviewed him twice in November. As detailed in the PSR, Underwood insisted his drug sales were sporadic and his cur-

rency was earned mostly from raising pit bulls. The probation officer calculated an imprisonment range of 151 to 188 months, significantly higher than the 87 to 108 months that would have resulted with a reduction for acceptance of responsibility and no increase for obstruction.

In January 1998 the district court ordered that Underwood be returned from Indiana where he was in state custody on an unrelated drug charge. Defense counsel had requested the move to facilitate review of the PSR with Underwood before the sentencing hearing scheduled for February 18. Underwood arrived in Milwaukee around January 29 and met with counsel on February 3. Two days later Underwood moved to withdraw his guilty pleas, asserting that he entered them without fully understanding the charges or supporting evidence. In the written motion counsel explained that, after the change-of-plea hearing, Underwood had "received information, mostly through allegations in the Presentence Investigative Report," that he thought "false and not provable."

At the hearing on Underwood's motion, defense counsel observed that plea negotiations concluded without the defense "hav[ing] in our possession all of the evidence or information that was being gathered on behalf of the government for future potential indictment charges." Counsel explained that Underwood, after reading the PSR, had voiced confusion about "what money laundering is" and complained of falsities in the report with respect to his trafficking and laundering activities. Underwood, the only witness at the hearing, testified that he did not understand money laundering, that the stipulated amount of drug proceeds was inaccurate, and that "everything" said about him by people mentioned in the PSR was false. When asked by his own counsel whether he had additional reasons for wanting to withdraw his guilty pleas, Underwood replied that "the obstruction of justice" was "some of it." Emphasiz-

ing primary concern about the "money laundering part," Underwood expressed uncertainty about whether he wished to withdraw his plea to the gun charge.

The district court denied Underwood's motion and sentenced him to concurrent prison terms of 120 and 168 months, respectively, on the gun and laundering convictions. Noting that trying to withdraw a guilty plea is "not uncommon ... after the defendant has seen the presentence report," the court observed that, in contrast to the change-of-plea hearing when he was articulate and unhesitating in disputing aspects of the government's factual basis, Underwood now was "a witness who doesn't remember, who is halting, who is not sure of what he said or did, didn't understand a number of proceedings, which is exactly contrary to what this court observed in October." The court admonished that the criminal process is not a "chess game" in which the defendant makes the first move by pleading guilty only to "sit back and wait for the opponent to move such as the preparation of the presentence report, and then upon reevaluation of the situation attempt to withdraw his move because it did not bring what he considered to be the desired result."

## II.

No defendant has an absolute right to withdraw a guilty plea. *United States v. Schilling*, 142 F.3d 388, 398 (7th Cir.1998). Prior to sentencing a district court may permit withdrawal if presented with a "fair and just" reason, Fed. R.Crim.P. 32(e); *United States v. Abdul*, 75 F.3d 327, 329 (7th Cir.1996), but the burden of justifying relief rests with the defendant, *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir.1992). Absent clear error we must accept a district court's findings about the propriety of the reasons given for seeking to set aside a guilty plea. *Schilling*, 142 F.3d at 398. And because the decision whether to permit withdrawal is one committed to the district court's discretion, *Abdul*, 75 F.3d

at 329, we will uphold the denial of a motion to withdraw a guilty plea unless that discretion is abused, *Schilling*, 142 F.3d at 398.

█ In urging us to find an abuse of discretion, Underwood stresses that his was not a motion borne from reading an unfavorable PSR. But his timing as well as his testimony in support of the motion make evident that disquiet over the recommended sentencing ranges indeed motivated Underwood's effort to take back his guilty pleas. Although he would have us conclude that his detention in Indiana thwarted earlier action, nothing prevented Underwood from immediately conveying to counsel his decision to seek withdrawal if that really was his intention before the PSR was completed. Underwood wrote his girlfriend from Indiana, and in November 1997 he likewise wrote the district judge—not as he says to voice misgivings about pleading guilty but to minimize his criminal conduct and solicit "some consideration" at sentencing. Moreover, in his plea agreement Underwood stipulated to facts establishing the base offense levels and specific offense characteristics, so these aspects of the PSR could not have surprised him. What changed after his guilty pleas was the increase for obstruction and concomitant loss of any decrease for acceptance of responsibility, the significance of which did not elude Underwood. Though silent now about these adjustments, in the district court he conceded that "the obstruction of justice" was one reason he wanted to withdraw his guilty pleas. The district court thought it the only reason, a conclusion we believe is supported by the record and sufficient to justify denying Underwood the relief he sought. *See United States v. Knorr*, 942 F.2d 1217, 1220 (7th Cir.1991) ("that a defendant underestimated his sentence when entering his plea is not a fair and just reason to permit him to withdraw that guilty plea"); *United States v. Scott*, 929 F.2d 313, 315 (7th Cir.1991) (accord).

█ We are not persuaded differently by Underwood's ostensive bases for seeking withdrawal. In the district court he principally argued that he pleaded guilty without "discovery" relating to crimes that were uncharged when the plea agreement was negotiated. Explaining that he bargained for the pre-indictment guilty plea to money laundering in order to limit his exposure for still other uncharged crimes including drug trafficking and tax offenses, Underwood concedes that in his zeal to end the ongoing investigation he "assumed the risk" and entered voluntary pleas without waiting for further discovery. Nonetheless, says Underwood, a defendant who negotiates a pre-indictment plea agreement should be free to take back his guilty plea if, after learning what evidence the government had available for trial, he "takes the position that the government's evidence against him is false." We disagree.

█ Underwood's contention, regardless of how it is framed, is not about discovery. He negotiated a plea to the Information before it was filed, and we do not understand him to argue that he was entitled to pre-charge discovery during the government's ongoing investigation. To the contrary, Underwood makes the point that "discovery" was unavailable precisely because the government had not finished investigating. Moreover, Underwood concedes that with respect to the indicted § 922(g) counts the government had tendered everything due him under Federal Rule of Criminal Procedure 16, and that rule compelled no additional disclosures concerning matters under investigation but not yet charged. *See* Fed.R.Crim.P. 16(a). In any event it would not have mandated disclosure of the kinds of materials—a list of the government's witnesses and their statements—that Underwood complains was unavailable to him when he executed his plea agreement. *See* Fed.R.Crim.P. 16(a)(2); *United States v. Moore*, 936 F.2d 1508, 1514-15 (7th Cir.1991); *United States v. Bouye*, 688 F.2d 471, 473-74 (7th

Cir.1982); *United States v. Disston,* 612 F.2d 1035, 1037–38 (7th Cir.1980). And we note that a guilty plea entered by a defendant who does not see the prosecution's hand in advance will still be voluntary if, as was true in this case, the plea follows disclosure of an adequate factual basis. *See United States v. Winston,* 34 F.3d 574, 578–79 (7th Cir.1994) (where defense counsel allegedly withheld discovery materials from defendant, district court properly denied motion to withdraw guilty plea since defendant had ample opportunity at the change-of-plea hearing to alert the court if he needed more information to enter an informed plea); *United States v. Seybold,* 979 F.2d 582, 587 (7th Cir.1992) (Fed. R.Crim.P. 11 "does not require the trial judge at the plea hearing to air all of the government's evidence").

■ What Underwood really advocates is that we countenance the use of Rule 32(e) to undermine the plea negotiation process. Plea agreements essentially are contracts between government and defendant, *e.g., United States v. Standiford,* 148 F.3d 864, 867–68 (7th Cir.1998); *Schilling,* 142 F.3d at 394, and their utility to either party depends upon the assurance of enforcement, *see United States v. Wenger,* 58 F.3d 280, 282 (7th Cir. 1995). By his own account Underwood pressed the government to stop investigating "numerous" potential charges, a point that leads us to note the probation officer's observation that informant accounts linking Underwood to crack dealing were not considered in assessing relevant conduct. Underwood was under no compulsion to negotiate with the government, and all he needed to do was wait for a superseding indictment if in weighing his options he wanted to assess the discovery that would become available under Rule 16. Instead, he knowingly "assumed the risk" and accepted the government's offer. A guilty plea, however, is not a "road-show tryout," *Hugi v. United States,* 164 F.3d 378, 382 (7th Cir.1999), and we "will not 'degrade the otherwise

serious act of pleading guilty into something akin to a move in a game of chess,'" *United States v. Silva,* 122 F.3d 412, 415–16 (7th Cir.1997) (quoting *United States v. Hyde,* 520 U.S. 670, 677, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997)). In essence, as the government observes, Underwood decided when he saw the PSR that he overestimated the strength of the evidence developed during the continuing investigation, but his reevaluation of his trial prospects afforded no basis for withdrawing his validly-entered guilty pleas. *See Silva,* 122 F.3d at 415. A contrary interpretation of Rule 32(e) would give Underwood the benefits of his plea agreement without any of the risks, *see Hugi,* 164 F.3d at 382, and we discern no error in the district court's conclusion that by advocating this result Underwood did not present a "fair and just" reason to support withdrawal.

■ Nor can we fault the district court for spurning the other justification Underwood gave for withdrawal. Though conceding his criticism related "mostly" to the money laundering charge, Underwood urged the district court to set aside his entire "package deal" because, as he explained, the guilty pleas were entered "during a hearing which most graciously can be termed confusing." But this contention is contradicted by Underwood's concession that his guilty pleas were voluntary, and under oath at the change-of-plea hearing he expressly assured the district court that he understood the nature and essential elements of both charges. That he did comprehend is evident because, when asked by the district court to comment on the accuracy of the factual basis, Underwood disputed aspects of the proffer even though endorsing it generally. However, in any event his representations at the change-of-plea hearing are binding. *See Seybold,* 979 F.2d at 587 (binding defendants to sworn statements made during plea colloquy is necessary to "'deter abuses in the withdrawal of guilty pleas ... and to protect the integrity of the judicial

process'" (citation omitted)). Moreover, having conducted the plea colloquy, the district court was in the best position to evaluate Underwood's later protestations of confusion. *See United States v. Messino,* 55 F.3d 1241, 1248 (7th Cir.1995); *United States v. Redig,* 27 F.3d 277, 281 (7th Cir.1994). The court disbelieved them, and its finding is not clearly erroneous.

AFFIRMED.