In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2749

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SIMON A. LUNDY, SR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 03-CR-10064—**Michael M. Mihm**, *Judge.*

ARGUED FEBRUARY 16, 2007—DECIDED MAY 1, 2007

Before FLAUM, RIPPLE, and ROVNER, *Circuit Judges.*

FLAUM, *Circuit Judge.* On the afternoon of Friday, September 16, 2005, with a Monday trial looming, Simon Lundy pled guilty to one count of conspiring to possess and distribute more than five kilograms of cocaine and more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841 and 846. On January 3, 2006, Lundy moved to terminate his attorney and to withdraw his guilty plea, claiming that his attorney's ineffective assistance rendered the plea involuntary. The district court conducted an evidentiary hearing and concluded that Lundy had voluntarily pled guilty. Accordingly, it denied Lundy's motion to withdraw the plea, and Lundy appeals. For the following reasons, we affirm the district court's ruling.

## I. BACKGROUND

On September 16, 2005, the Friday morning before he was scheduled to go to trial, Simon Lundy met with his attorney, Thomas Iben, to discuss the possibility of pleading guilty.[1] Iben had called for the meeting, and he met Lundy in a cell block of the courthouse to discuss the pros and cons of entering a guilty plea. Iben enlisted Rob Alvarado, Lundy's former federal defender, to help him explain that the government's case against Lundy had strengthened since Alvarado ceased representing him. Iben recruited Alvarado for this job because Lundy trusted Alvarado and because Alvarado had previously advised Lundy to go to trial. During a discussion that lasted about an hour, both Iben and Alvarado recommended that Lundy plead guilty. At some point in the discussion, Iben and Lundy began arguing and Iben threw papers at Lundy through the cell door. Iben apologized for his outburst, and he and Lundy resumed their discussion. When Iben and Alvarado left, Lundy still wanted to go to trial.

Around 4:00 that afternoon, Iben met with Lundy alone. Iben advised him that if he entered a guilty plea, his sentence would be based on the amount and type of the drugs he possessed. Iben then told Lundy that the government had made a concession about the strength of its drug amount evidence. Based on the concession, Lundy decided to plead guilty. According to Iben, he and Lundy reviewed the plea agreement very quickly because it was late on Friday, and the court wanted to know whether to call off the jurors.

---

[1] Iben was Lundy's third attorney. Lundy's first attorney, a federal defender, withdrew because of a conflict of interest stemming from his office's prior representation of a cooperating government witness. Lundy's second attorney withdrew at Lundy's request.

Immediately after Lundy agreed to plead guilty, the district court conducted a Rule 11 hearing, where Lundy indicated that he was satisfied by Iben's advice and representation, that he had read the plea agreement and discussed it with Iben, and that he understood the terms of the agreement. The district court reviewed salient paragraphs of the plea agreement, and Lundy indicated that he understood each one. Lundy also agreed that no one had made any promises or assurances to him other than those contained in the plea agreement and that no one had forced him to plead guilty.

The district court asked what had changed Lundy's mind about pleading guilty, given that he previously had insisted on going to trial. Iben responded that "there were some tacit concessions on [the Government's] part as far as how good their evidence was and of course sometimes the evidence—you see less at the sentencing than you do at a full trial." The court then reviewed a range of possible sentences based on different relevant conduct scenarios, emphasizing that the court would resolve the dispute about drug type and quantity.

At that point, the government stated that its best evidence as to the amount and type of drugs consisted of admissions Lundy made to a former cell mate in Knox County jail. The Assistant U.S. Attorney remarked that she "told Mr. Iben [she] would be willing to say this to the Court." The government made no representation about the evidence it intended to present at sentencing.

On December 12, 2005, the Probation Office issued Lundy's initial presentence investigation report, which documented drug amounts in excess of eight kilograms of powder cocaine and 500 grams of cocaine base. On January 3, 2006, Lundy filed a motion to terminate his attorney and withdraw his guilty plea. Lundy argued that, under the totality of the circumstances, his plea was not

knowing and voluntary. He claimed that he did not have an adequate opportunity to review the plea agreement with his attorney and that he thought his sentence would be based solely on the amount of powder cocaine that he admitted during the change of plea hearing.

Lundy also argued that Iben's methods of persuading him to plead guilty were objectively unreasonable, thus constituting ineffective assistance of counsel. Lundy highlighted three facts that allegedly demonstrated Iben's deficiency: 1) Iben's enlistment of Lundy's former attorney, who had a conflict of interest, to help convince Lundy to plead; 2) Iben's throwing papers at Lundy; and 3) Iben's use of a worthless government concession as a selling point.

On May 12, 2006, the district court conducted an evidentiary hearing on Lundy's motion to withdraw. The court heard testimony from Iben and Alvarado, but Lundy did not testify. Iben described his discussion with Lundy about the government's concession as follows:

> I also told him that I had had some discussions with the Government[,] and they were willing to concede in all likelihood that their best evidence as to weight and type of substance came from a particular witness who was allegedly a snitch of theirs from when he was housed with Lundy at the Knox County jail[,] and that's what we talked about and that was one of the bigger concerns because Mr. Lundy's big concern was that the main witness, Wakefield, was not telling the truth about what all Lundy had done.

After the hearing, the district court found that Lundy knew his sentence would not be based only on the amount of powder cocaine he admitted at his plea hearing. The district court noted that Lundy's hearing included an extensive discussion about the fact that the drug amount

and type remained in dispute, and Lundy agreed that the district court would resolve the disputes at sentencing.

Additionally, the district court found that Iben performed reasonably and that Lundy had sufficient time to review the plea agreement. The court did express concern that Alvarado's presence at the September 16 meeting between Iben and Lundy had the appearance of impropriety, but found that it was not inappropriate under the circumstances. Accordingly, the district court denied Lundy's motion to withdraw the guilty plea.

On June 15, 2006, the district court conducted Lundy's sentencing hearing. The government presented testimony from Kenneth Zimmerman, Lundy's former cell mate, and Diondre Wakefield, another cooperating witness.[2] The district court accepted the drug amounts that Wakefield and Zimmerman described and determined that Lundy was responsible for more than eight kilograms of cocaine and 500 grams of cocaine base, giving Lundy a base offense level of 34. An obstruction of justice enhancement increased the offense level to 36, and the court sentenced Lundy to 188 months in prison, the low end of the recommended guidelines range.

## II. DISCUSSION

Lundy argues that the district court erred in denying his motion to withdraw the guilty plea. This Court has

---

[2] Wakefield was a Peoria drug dealer who engaged in drug transactions with Lundy. According to Lundy, he engaged in only two transactions with Wakefield, involving 13.5 ounces of cocaine. Lundy was concerned that Wakefield would testify falsely to reduce his own 22-year sentence. Indeed, Wakefield testified that he and Lundy engaged in transactions involving far more than 13.5 ounces of cocaine.

recognized that a defendant's right to withdraw a guilty plea is not absolute. *United States v. Underwood*, 174 F.3d 850, 852 (7th Cir. 1999). A guilty plea, once accepted by the court, may be withdrawn only for a "fair and just reason," and the burden of justifying relief rests with the defendant. Fed. R. Crim. P. 11(d)(2)(B); *Underwood*, 174 F.3d at 852.

Ineffective assistance of counsel can render a plea agreement involuntary, and is therefore a valid basis for withdrawing a guilty plea. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir. 2002). To demonstrate ineffective assistance in this context, a defendant must show both that counsel's performance was objectively unreasonable and that, but for counsel's errors, the defendant would not have pled guilty. *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir. 2005). When determining whether a defendant entered a plea involuntarily, courts consider the totality of the circumstances. *See, e.g., United States v. Bradley*, 381 F.3d 641, 645 (7th Cir. 2004); *United States v. LeDonne,* 21 F.3d 1418, 1423 (7th Cir. 1994).

We review a district court's denial of a motion to withdraw a guilty plea based on ineffective assistance for an abuse of discretion. *United States v. Merriweather*, 294 F.3d 930, 931 (7th Cir. 2002). The Court upholds factual findings concerning whether a defendant demonstrated a "fair and just" reason to withdraw his guilty plea unless those findings are clearly erroneous. *United States v. Logan*, 244 F.3d 553, 557 (7th Cir. 2001). "[A] district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions" during the plea colloquy. *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000) (citation and quotation omitted).

Lundy identifies several factors that he claims add up to ineffective assistance of counsel. First, Lundy alleges that

the general atmosphere in which he agreed to plead guilty—an eleventh hour meeting with his attorney as the clock ticked down to trial—was conducive to coercion. Lundy emphasizes that he had continuously expressed his desire to go to trial, and it was not until the last minute that his attorney began pushing him to make a deal. Nevertheless, the district court properly found that the timing of Lundy's plea did not provide a reason for withdrawing it. Lundy acknowledged that he understood the terms of the plea agreement, and the district court reviewed the salient terms during the Rule 11 hearing. That the agreement was made close to trial is irrelevant so long as Lundy understood it and voluntarily entered into it.

Second, Lundy argues that it was improper for Iben to call in Alvarado to discuss the possibility of pleading with Lundy, given that Alvarado had a conflict of interest. While the district court recognized that Iben's enlistment of Alvarado could have appeared improper, it accepted Iben's reasons for doing so, i.e., that Lundy trusted Alvarado and that Alvarado had previously advised him to go to trial. We also note that Alvarado's conflict was not personal. Rather, the Federal Defender's Office had previously represented a cooperating government witness in an unrelated matter. Moreover, the district court found that Alvarado's presence had no effect on Lundy's decision to plead guilty. That finding was not clearly erroneous, especially since Lundy still planned to go to trial at the time Alvarado left.

Third, Lundy claims that his morning argument with Iben, in which Iben threw papers at him, demonstrated Iben's ineffectiveness. While we do not condone Iben's behavior, the district court did not abuse its discretion in finding that Iben's overall performance was reasonable. In any event, Alvarado testified that Iben and Lundy "settled back down and had a discussion about the facts and the law of the case" following the argument, and Iben apolo-

gized to Lundy for his outburst. Furthermore, there is no evidence that the argument coerced Lundy into pleading guilty because he still planned to go to trial at the end of the morning meeting.

Finally, Lundy contends that Iben trumpeted the government's "worthless concession" as something that would benefit Lundy at sentencing in order to induce him to plead guilty. The government's statement at the plea hearing shows that it made Lundy no false promises to induce a guilty plea. What remains unclear, however, is what Iben represented to Lundy. He told the district court that the government's concession is what finally convinced Lundy to enter into a plea agreement, but he did not explain how or why it changed Lundy's mind. Iben also stated that the concession went to the strength of the government's evidence, and that he hoped some of the evidence regarding drug amounts might not be used if Lundy forewent a trial. However, Iben did not indicate whether he told Lundy that the government would not present Wakefield's testimony.

Because Lundy did not testify at the hearing, we cannot determine whether Iben inflated the value of the government's concession. Nor do we know what Lundy thought the concession meant. If Iben merely hoped or predicted incorrectly that the government would not put on its weaker evidence, his performance was not deficient. *See, e.g.*, *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (recognizing that a mere inaccurate prediction of a sentence does not constitute deficient performance). On the other hand, if defense counsel made inaccurate representations or grossly mischaracterized the potential sentence, then his performance might have been deficient. *Id.* Significantly, Lundy acknowledged at his change of plea hearing that no one had made him any promises other than those contained in the agreement. Ultimately, Lundy's failure to testify doomed his claim, because the

burden of justifying relief was his at all times. *Underwood*, 174 F.3d at 852. In short, the district court did not abuse its discretion in holding that Lundy failed to provide a fair and just reason for withdrawing his plea.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's ruling.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
